STATE OF NORTH CAROLINA v. PATRICK HESTER

No. 362A91-2

(Filed 10 May 1996)

**1. Evidence and Witnesses § 1005 (NCI4th)— hearsay—family history exception—inapplicability to events during marriage**

The family history exception to the hearsay rule set forth in N.C.G.S. § 8C-1, Rule 804(b)(4) merely allows testimony about

the existence of a marriage or other personal relationships and does not permit hearsay testimony about events, activities, or emotional states occurring within the marital relationship between a murder victim and her husband which suggest that the husband, rather than defendant, may have murdered the victim.

**Am Jur 2d, Evidence § 691.**

2. **Evidence and Witnesses §§ 115, 1008 (NCI4th)— suggestion crime committed by another—motive—residual hearsay exception inapplicable**

Testimony by a murder victim's sister-in-law which suggested that the victim's husband, rather than defendant, might have committed the crime was not admissible under the residual hearsay exception of N.C.G.S. § 8C-1, Rule 804(b)(5) since (1) defense counsel failed to give the prosecutor timely written notice of her intent to use this testimony as required by the rule, and (2) the proffered evidence was not relevant because it did no more than arouse a suspicion as to the husband's guilt on the basis that he might have had a motive to murder the victim and thus did not point directly to the guilt of a person other than defendant.

**Am Jur 2d, Evidence § 587.**

3. **Criminal Law § 426 (NCI4th)— prosecutor's closing argument—absence of explanation during interrogation—no comment on exercise of right to silence**

The prosecutor's comment during closing argument in a first-degree murder trial that defendant, who had confessed to the murder, did not explain how the victim's pants were removed was not an improper reference to defendant's exercise of his right to silence during custodial interrogation but was a proper comment on the evidence adduced at trial.

**Am Jur 2d, Trial §§ 557-559.**

4. **Criminal Law §§ 423, 425 (NCI4th)— prosecutor's closing argument—no improper comments on silence, failure to testify**

The prosecutor's comments during closing argument that "[t]here are a lot of unanswered questions in this case," that defendant did not subpoena a relative he claimed to have seen the night of the crime to testify in his defense, and that defendant's

"confession is unrebutted" were not improper comments on defendant's exercise of his right to silence and his failure to testify and did not require the trial court to intervene *ex mero motu*.

**Am Jur 2d, Trial §§ 590, 599.**

**Adverse presumption or inference based on party's failure to produce or examine family member other than spouse—modern cases. 80 ALR4th 337.**

5. **Criminal Law § 378 (NCI4th)— repetitive questioning— comments by court—no expression of opinion**

The trial court did not express an opinion on questions of fact in the jury's presence and did not abuse its discretion to limit repetitive questioning by comments emphasizing that defense counsel's questioning was repetitive and indicating that it would like to move on.

**Am Jur 2d, Trial §§ 302-306.**

6. **Criminal Law § 375 (NCI4th)— comments by court and prosecutor—jury not present—absence of prejudice**

Defendant was not prejudiced by several comments the trial court and the prosecutor made out of the jury's presence which indicated impatience with defense counsel's repetitive cross-examinations, concern about counsel's last-minute motion for a fingerprint expert and last-minute subpoenas, and frustration about counsel's refusal to be straightforward as to the relevance of her inquiries and where her questioning was leading.

**Am Jur 2d, Trial § 284.**

Appeal of right pursuant to N.C.G.S § 7A-27(a) from a judgment imposing a sentence of life imprisonment entered by Brannon, J., at the 22 February 1993 Criminal Session of Superior Court, Person County, on a jury verdict finding defendant guilty of first-degree murder. Heard in the Supreme Court 10 April 1996.

*Michael F. Easley, Attorney General, by Clarence J. DelForge, III, Assistant Attorney General, for the State.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by Daniel R. Pollitt, Assistant Appellate Defender, for defendant-appellant.*

WHICHARD, Justice.

In April 1990 defendant was convicted of the first-degree murder of Lynn Stainback, an employee of the Fast Fare on Nicholas and Williams Streets in Henderson, and sentenced to life imprisonment. This Court granted defendant a new trial. *State v. Hester*, 330 N.C. 547, 411 S.E.2d 610 (1992). Upon retrial, defendant was again convicted, and he now appeals from his conviction and sentence. We find no prejudicial error.

The State's evidence tended to show that at approximately 7:30 p.m. on 10 December 1989, Officer D.H. Edwards of the Henderson Police Department drove past the Fast Fare and noticed a young, black male on a bicycle in front of the store. Officer Andrew Carter, who arrived at the Fast Fare at approximately 8:18 p.m. in response to a call, saw a young, black male on a bicycle across the street from the Fast Fare. Both officers testified that the young man wore a black and white checkered coat and that the bicycle had white "Mag" wheels.

Officers W.E. Vick and R.N. Stancill, who arrived at the Fast Fare at approximately 8:17 p.m., found the store's front glass doors locked and observed a great deal of blood on the floor. Officers Carter and Vick noticed someone in the storage area at the rear of the store and repeatedly shouted for her to come out. Lynn Stainback, the victim, emerged from the storage area covered in blood and nude from the waist down; she staggered toward the front doors, falling twice. Because Stainback could not reach the latch on the front doors to open them, Officer Vick kicked the right-hand door until the left-hand door popped open. After Stainback had been removed by emergency medical technicians, the officers searched the store and determined that no one else was inside. Stainback died on the way to the hospital without identifying her assailant. The autopsy revealed that she had been stabbed twice in the back and once each in the stomach and chest. No evidence of rape was detected.

State Bureau of Investigation (SBI) crime scene specialist Pat Matthews testified that she noticed a great deal of popcorn and blood on the floor and observed blood smears leading from the popcorn machine to the cash register and back to the storage area. A dagger-type hunting knife with an eight- or nine-inch blade was found lying on the floor between the store's two counters. Agent Matthews found numerous footwear impressions in blood on the store's tile floor. SBI Agent Ricky Navarro testified that approximately twenty of these

prints were consistent with the Adidas athletic shoes recovered from defendant the day after the murder and that the footprints must have been made by shoes of the same design, size, and amount of wear as those worn by defendant. Agent Matthews also found a bloody fingerprint on the inside thumb latch of the front door dead-bolt lock which was later determined to match the fingerprint on defendant's left index finger.

Defendant, then sixteen years old, was arrested at approximately 3:00 p.m. on 11 December 1989 and taken to the Henderson Police Department. Lieutenant Tim Robinson read defendant his juvenile rights, and defendant indicated that he understood his rights. After Lieutenant Robinson informed defendant that he was a suspect in the Fast Fare homicide, SBI Special Agent Richard Sims asked defendant about his shoes. Defendant then became nervous and asked to speak to Lieutenant Robinson alone; after Agent Sims left the room, defendant confessed that he had stabbed and killed Stainback. Agent Sims returned to the interview room, and defendant gave a statement describing the circumstances of the killing in which he acknowledged that he had stabbed Stainback, dragged her into the storage room, and locked the front door by turning the latch on the inside. When Lieutenant Robinson inquired why he had killed Stainback, defendant responded that "it was just something that he wanted to do."

Defendant first assigns as error the trial court's exclusion of the testimony of Jewel Journigan, Stainback's sister-in-law, which suggested that Stainback's husband, rather than defendant, might have committed the crime. At trial, defendant called Journigan to testify about Stainback's relationship with her husband, Randall Stainback. Journigan testified on *voir dire* that Randall was a member of Hell's Angels and was nicknamed "Cowboy," that Stainback and Randall did not get along very well, that Randall physically abused Stainback and her children from a former marriage, and that Stainback often hid from Randall by spending the night at Journigan's house. Journigan testified that according to Stainback, Randall had killed a man in 1988 whose death had been ruled a suicide, and Randall knew Stainback had been talking about the other man's death. Journigan further testified that Stainback said her husband had threatened several times to kill her and that Journigan had seen a black person named "Patrick" talking to Randall in the Stainback home two days after the murder. The trial court excluded Journigan's evidence, noting that it did not fall within the two hearsay exceptions asserted as bases for its admission: the family history exception of Rule 804(b)(4) of the North

Carolina Rules of Evidence, and the residual hearsay exception of Rule 804(b)(5). N.C.G.S. § 8C-1, Rule 804(b)(4), (b)(5) (1992).

[1] Defendant's reliance on Rule 804(b)(4) is misplaced. That rule merely allows testimony about the existence of a marriage or other personal relationship. It has no bearing on events, activities, or emotional states occurring within those relationships. The trial court correctly noted that this witness had shown that she herself could testify as to the fact of the marital relationship between Randall and the victim, the only portion of the proffered evidence pertinent under this rule. Further, the State did not dispute the fact of the marital relationship. It thus was not necessary to introduce hearsay evidence for this purpose, and the trial court did not err in declining to admit this proffered testimony under Rule 804(b)(4).

[2] Nor was the evidence admissible under Rule 804(b)(5). The trial court correctly noted that defense counsel had failed to give the prosecutor timely, written notice of her intent to use Journigan's testimony, which is a prerequisite to admission of evidence under Rule 804(b)(5). Further, it is well settled that "to be both relevant and admissible, evidence tending to show the guilt of one other than the defendant must point directly to the guilt of a specific person or persons." *State v. Larrimore*, 340 N.C. 119, 144, 456 S.E.2d 789, 802 (1995). It must do more than create mere conjecture of another's guilt. *State v. McNeill*, 326 N.C. 712, 721, 392 S.E.2d 78, 83 (1990). The proffered evidence did no more than arouse suspicion as to Randall's guilt on the basis that he might have had a motive to murder the victim. There was no evidence linking him directly to the crime, and the evidence was not inconsistent with defendant's guilt. The trial court thus properly excluded the evidence. *See Larrimore*, 340 N.C. at 144-45, 456 S.E.2d at 802.

Defendant contends for the first time on appeal that Journigan's evidence was admissible under the state of mind exception to the rule against hearsay, N.C.G.S. § 8C-1, Rule 803(3) (1992), and that its exclusion violated certain of his constitutional rights. Defendant's failure at trial to raise these bases for the admission of Journigan's testimony bars their assertion here. As we noted in *State v. Benson*, 323 N.C. 318, 322, 372 S.E.2d 517, 519 (1988), defendant "may not swap horses after trial in order to obtain a thoroughbred upon appeal." This assignment of error is therefore overruled.

In his next assignment of error, defendant contends that he is entitled to a new trial because the prosecutor improperly commented

STATE v. HESTER

[343 N.C. 266 (1996)]

during closing argument on defendant's exercise of his right to silence. Referring to the fact that Stainback was found nude from the waist down, the prosecutor stated: "Now how that happened back here we do not know. The defendant did not tell the officers what his role was in stripping Lynn Stainback from the waist down." At another point, the prosecutor stated, "There are a lot of unanswered questions in this case." The prosecutor further noted that defendant did not subpoena Ada Henderson, a relative he claimed to have seen at the Fast Fare the night of the crime, to testify in his defense. Finally, the prosecutor argued that defendant's "confession is unrebutted."

Defendant did not object to these statements at trial but now contends that they amounted to plain error. The correct standard of review, however, is not plain error but whether the arguments were "so prejudicial and grossly improper as to require corrective action by the trial judge ex mero motu." *State v. James*, 322 N.C. 320, 324, 367 S.E.2d 669, 672 (1988).

**[3, 4]** None of these comments referred to defendant's invocation of his right to silence. Defendant argues that *State v. Baymon*, 336 N.C. 748, 757-58, 446 S.E.2d 1, 6 (1994), supports his argument that the prosecutor's statement questioning defendant's role in stripping Stainback improperly referred to defendant's exercise of his right to silence during custodial interrogation. *Baymon*, however, is distinguishable. In that case the prosecutor commented *directly* upon defendant's failure to testify about the charged crimes, stating "The defendant knows, but he's not going to tell you" about the sexual assaults. *Id.* at 757, 446 S.E.2d at 6. Here, the prosecutor merely pointed out that defendant, who had confessed to the murder, did not explain how Stainback's pants were removed. This was a proper comment on the evidence adduced at trial. *See State v. Williams*, 317 N.C. 474, 481, 346 S.E.2d 405, 410 (1986) (counsel entitled to argue to jury facts in evidence and all reasonable inferences to be drawn therefrom). Nor was the prosecutor's statement that defendant failed to subpoena Henderson to testify on his behalf improper. A prosecutor may argue to the jury the defendant's failure to produce exculpatory evidence or evidence which contradicts the State's case. *State v. Taylor*, 337 N.C. 597, 613, 447 S.E.2d 360, 370 (1994); *State v. Erlewine*, 328 N.C. 626, 633, 403 S.E.2d 280, 284 (1991). This Court repeatedly has held that a prosecutor may argue that the State's evidence was uncontradicted and that such an argument is not an improper reference to defendant's failure to testify. *See Erlewine*, 328

N.C. at 633, 403 S.E.2d at 284. The prosecutor's comment that defendant's confession was unrebutted thus was not improper. We hold that none of the comments complained of required corrective action by the trial court *ex mero motu.*

[5] In his final assignment of error, defendant contends that he is entitled to a new trial because the trial court engaged in improper and disrespectful conduct toward defendant's trial counsel. He further contends that the trial court improperly expressed its opinion on questions of fact in the jury's presence, in violation of N.C.G.S. § 15A-1222. Defendant raises six instances in which he contends that the trial court made abusive comments about defense counsel in the jury's presence. In each of these instances, the trial court emphasized that defense counsel's questioning was repetitive and indicated that it would like to move on.

The decision whether to allow repetitive questioning is within the trial court's discretion, and that decision will not be overturned on appeal absent a showing that the ruling was "so arbitrary that it could not have been the result of a reasoned decision." *State v. Green,* 336 N.C. 142, 164, 443 S.E.2d 14, 27, *cert. denied,* —— U.S. ——, 130 L. Ed. 2d 547 (1994). Having reviewed the contested comments, we conclude that the trial court did not express its opinion on questions of fact in the jury's presence and did not abuse its discretion to limit repetitive questioning.

[6] Defendant also cites as improper several comments the trial court and the prosecutor made out of the jury's presence which indicated impatience with defense counsel's repetitive cross-examinations, concern about counsel's last-minute motion for a fingerprint expert and last-minute subpoenas, and frustration about counsel's initial refusal to be straightforward as to the relevance of her inquiries and where her questioning was leading. If the trial court uses language which tends to bring an attorney into contempt before the jury, it commits an error of law which may require reversal of the judgment. *State v. Lynch,* 279 N.C. 1, 11, 181 S.E.2d 561, 567 (1971). The comments defendant considers most egregious here, however, were made outside the jury's presence. After reviewing the entire record, we hold that while trial courts should abstain from language directed to counsel which can reasonably be construed as abusive in nature, the comments by the trial court and the prosecutor here did not result in prejudice to defendant.

For the foregoing reasons, we conclude that defendant received a fair trial, free of prejudicial error.

NO ERROR.