STATE v. FLOYD

[143 N.C. App. 128 (2001)]

———————

STATE OF NORTH CAROLINA v. GILES BRANTLEY FLOYD, Defendant

No. COA00-291

(Filed 17 April 2001)

### 1. Evidence— offense committed by others—speculative

The trial court did not err in the first-degree murder prosecution of defendant for killing his wife by excluding evidence that his girlfriend's sons might have committed the murder. Evidence that the defendant's girlfriend's sons were hostile to his wife and were not in school on the day of the murder does no more than

arouse suspicion that they had motive and opportunity and does not link them directly to the murder. Moreover, the evidence has no bearing on whether defendant committed the murder because, assuming that it established that the two sons were involved, it is perfectly conceivable that defendant and the two sons were together responsible for the murder.

**2. Criminal Law— defendant's argument—suggestion that others not investigated**

The trial court did not abuse its discretion in a first-degree murder prosecution by sustaining the State's objection during defendant's closing argument to the expression of an opinion that there was sufficient evidence to implicate others. The evidence had been properly excluded and, assuming error, there was not a reasonable possibility of a different result without the error.

**3. Homicide— first-degree murder—short-form indictment— constitutionality**

The short-form indictment for first-degree murder is constitutional.

Appeal by defendant from judgment entered 2 March 1998 by Judge Gregory A. Weeks in Columbus County Superior Court. Heard in the Court of Appeals 13 March 2001.

*Michael F. Easley, Attorney General, by Celia Grasty Lata, Assistant Attorney General, for the State.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by Benjamin Dowling-Sendor, Assistant Appellate Defender, for defendant-appellant.*

HUDSON, Judge.

Defendant was tried and convicted on one count of first-degree murder and sentenced to life imprisonment without parole. The evidence at trial tended to show the following. Linda Gore Floyd (Linda), defendant's wife of twenty-nine years, was killed on 24 April 1996. She was found dead in a utility workshop located outside the home in which she and defendant lived. Her death resulted from multiple blows to her head with a blunt instrument.

On the morning of 24 April 1996, Linda's daughter, Crystal Floyd Gore (Crystal), who lived about ten miles from her parents, spoke on

the phone with Linda. During the conversation, Linda told her daughter that defendant had "just left." Later in the conversation, Crystal heard the phone drop and then silence. Crystal tried calling back but the line was busy. Crystal drove to her parents' house, calling her grandfather Ralph Gore (Ralph) on her cell phone, as well as 911. Ralph went to the home and found Linda dead, lying face down in the utility shop in a pool of blood. Crystal arrived after Ralph, and defendant returned home at approximately 11:00 a.m.

The State's expert witness in forensic serology and blood spatter testified that the boots and jeans which defendant had been wearing on the day of the murder had blood spatter stains on them. The State's expert in DNA analysis testified that Linda's DNA matched the DNA taken from defendant's jeans and boots, that the DNA from the jeans and boots came from a single person, and that the DNA did not match defendant's DNA. Defendant's expert in DNA analysis testified that DNA taken from defendant's boots matched Linda's DNA. Defendant's expert in crime scene analysis, although critical of some procedures that had been used in collecting samples from the jeans, testified that the source of the blood on defendant's boots was Linda.

Defendant had been involved with another woman, Karen Fowler (Karen), for several years prior to Linda's death. At various times during the affair with Karen, defendant separated from Linda to live with Karen. Linda had filed a divorce complaint against defendant on 12 March 1996. Thereafter, defendant and Linda apparently reconciled, and on 20 March 1996, they entered into a consent order filed with the district court. The order provided that if Linda suspected defendant of an extramarital affair, defendant would have to immediately vacate the home, taking only his personal effects, and defendant would have to begin paying Linda $500.00 per month in alimony until she remarried. Defendant then moved back in with Linda.

The State presented an abundance of circumstantial evidence regarding defendant's motive for the murder. For example, a neighbor of defendant testified that about two weeks before the murder, he overheard defendant say, "You don't know what's in my mind. You don't know what I'm thinking. But you'll read about it in a couple of weeks in the paper." A friend of defendant testified that about a month before Linda's murder, defendant stated that he had ended a relationship with another woman, and that he missed having sex with her and dreamed about it. A second neighbor testified that after defendant moved back in with Linda, defendant told him that he still

**STATE v. FLOYD**

[143 N.C. App. 128 (2001)]

loved Karen. Karen testified that when defendant was initially served with the divorce complaint, he told Karen that "he'd rather go to jail before he paid [Linda] any money." Karen also testified that defendant once stated to her that he "thought about either killing [Linda] or [having] her killed." Telephone records were introduced showing twelve calls made from defendant and Linda's home to Karen's home between 15 April 1996 and 22 April 1996, as well as five calls made to Karen's home after Linda's death. After Linda's death, defendant filed claims for two life insurance policies, including one for $50,000.00.

Defendant attempted to present evidence to establish that Karen and her two teenage sons had a motive for killing Linda. Some of this evidence was admitted at trial, including: a tape of a harassing message left by Karen on defendant and Linda's home answering machine in early spring of 1996; evidence that Linda had taken out a restraining order against Karen and her sons; and testimony that Karen had dumped clothing in the front yard of defendant and Linda's home on one occasion. As we discuss in further detail below, other evidence offered by defendant to establish motive and opportunity on the part of Karen's two sons was excluded by the trial court.

[1] Defendant timely appealed from the judgment against him. On appeal, defendant raises five assignments of error. Defendant's first argument, encompassing three assignments of error, is that the trial court committed reversible error on three occasions in excluding evidence offered by defendant to show that Karen's two sons might have killed Linda. First, defendant sought to admit testimony by an investigating officer that during an interview with Karen's two sons, they admitted they had not been in school on the morning of 24 April 1996, the day Linda was murdered. The trial court sustained the State's objection to this evidence. Second, Crystal was asked a question regarding the feelings Linda had expressed about the harassing answering machine message left by Karen. In response, Crystal was apparently prepared to testify that Linda had told her that on one occasion while she was driving her car, Karen's two sons had pulled up beside her at a stop light, had yelled obscenities at her, and had given her the finger. The trial court interrupted Crystal, without an objection by the State, and instructed her to restrict her answers to the scope of the question asked. Third, defense counsel sought to elicit Crystal's testimony that she had told the investigating officer about Linda's statements to Crystal regarding the stop light incident. The State objected, and during *voir dire* in the absence of the jury, defense counsel argued the testimony should be admitted in order to

explain why the investigating officer had interviewed Karen's two sons. The trial court sustained the State's objection.

The rule applicable to the admission of evidence of third-party guilt is well-established:

> Evidence that another committed the crime for which the defendant is charged generally is relevant and admissible as long as it does more than create an inference or conjecture in this regard. It must point directly to the guilt of the other party. Under Rule 401 such evidence must tend *both* to implicate another *and* be inconsistent with the guilt of the defendant.

*State v. Cotton*, 318 N.C. 663, 667, 351 S.E.2d 277, 279-80 (1987) (emphasis in original). Defendant contends that the evidence in question should have been admitted pursuant to the holding in *State v. McElrath*, 322 N.C. 1, 366 S.E.2d 442 (1988). In *McElrath*, the defendant was convicted of the first-degree murder of his son-in-law based solely upon circumstantial evidence. On appeal, the Court held that it was error for the trial judge to refuse to admit a map found among the victim's personal papers showing the area surrounding the defendant's summer home, with notations indicating that the victim, with others, planned a larceny. *Id.* at 12, 366 S.E.2d at 448. Citing Rule 401, the Court found that the map and notations, together with other evidence offered, could indicate that the victim suffered a falling out with his co-conspirators which resulted in his death at their hands and not at the hands of the defendant. *Id.* at 12-14, 366 S.E.2d at 448-49. Here, defendant claims that the evidence in question tends to show that Karen's two sons had motive and opportunity for the murder, and that this evidence was therefore relevant and should have been admitted at trial. We disagree.

In *McElrath*, the excluded evidence arguably established the possibility that other individuals, involved in a larceny scheme with the victim to rob the defendant's house, had killed the victim. This theory was inconsistent with the theory that defendant committed the murder, since no evidence was presented that defendant had any connection to anyone involved in the possible larceny scheme, and since it would be unlikely for the defendant to be involved in a larceny scheme to rob his own house. Thus, the evidence in *McElrath* served to inculpate other individuals, and at the same time served to exculpate the defendant as the perpetrator of the murder. Here, the evidence in question was not relevant because it neither implicated Karen's sons in the murder, nor exculpated defendant.

In *State v. Hester*, 343 N.C. 266, 470 S.E.2d 25 (1996), the defendant assigned as error the trial court's exclusion of the testimony of a witness which suggested that the victim's husband, rather than the defendant, might have murdered the victim. At trial, the defendant called the witness to testify about the victim's relationship with her husband. The witness testified on *voir dire* that the victim's husband was a member of Hell's Angels and was nicknamed "Cowboy," that the victim and her husband did not get along very well, that the husband physically abused the victim and her children from a former marriage, and that the victim often hid from her husband by spending the night at the home of the witness. The witness further testified that the victim had said that her husband had threatened several times to kill her. On appeal, the Court stated:

> [I]t is well settled that "to be both relevant and admissible, evidence tending to show the guilt of one other than the defendant must point directly to the guilt of a specific person or persons." It must do more than create mere conjecture of another's guilt. The proffered evidence did no more than arouse suspicion as to Randall's guilt on the basis that he might have had a motive to murder the victim. There was no evidence linking him directly to the crime, and the evidence was not inconsistent with defendant's guilt. The trial court thus properly excluded the evidence.

*Id.* at 271, 470 S.E.2d at 28 (citations omitted). Similarly, the evidence here, showing that Karen's two sons were hostile toward Linda and were not in school on the day of the murder, does no more than arouse suspicion that Karen's sons had motive and opportunity to murder Linda. This evidence does not directly link Karen's sons to the murder.

Nor does the evidence exculpate defendant. In *State v. Rose*, 339 N.C. 172, 451 S.E.2d 211 (1994), *cert. denied*, 515 U.S. 1135, 132 L. Ed. 2d 818 (1995), the defendant was convicted of two counts of first-degree murder and two counts of armed robbery. The defendant on appeal contended that the trial court had erred by not allowing him to ask the investigating detective if he had an opinion about the number of people involved in the murders. During an offer of proof, the detective stated that immediately after investigating the murders he believed there was a strong possibility that a particular individual named Harvey, an acquaintance of defendant who was also in the area at the time of the murders, had knowledge of, and might have been

involved in, the murders. The defendant argued that this testimony should have been admitted because it was relevant evidence which showed that someone else might have committed the murders. The Court held that the evidence amounted to mere conjecture that Harvey was involved in the murders, and did not show that defendant did not commit them. *Id.* at 191, 451 S.E.2d at 222. The Court also expressly distinguished the case from *McElrath*, explaining that the evidence in *McElrath* not only inculpated another, but also exculpated the defendant, while the evidence in *Rose* was not necessarily inconsistent with defendant's guilt. *Id.*

Here, the evidence in question does not have any bearing on whether defendant committed the murder. This is because even assuming *arguendo* that the evidence in question established that Karen's two sons were involved in the murder, such evidence would not establish that defendant did not commit the murder, since it is perfectly conceivable that defendant and Karen's sons were, together, responsible for the murder. "Evidence which tends to show nothing more than that someone other than the accused had an opportunity to commit the offense, without tending to show that such person actually did commit the offense *and that therefore the defendant did not do so*, is too remote to be relevant and should be excluded." *State v. Britt*, 42 N.C. App. 637, 641, 257 S.E.2d 468, 471 (1979) (emphasis added). In sum, the evidence in question was not relevant because it neither inculpated Karen's sons in Linda's murder, nor served to exculpate defendant. The trial court properly excluded this evidence, and defendant's first three assignments of error are overruled.

[2] Defendant next contends that the trial court erred in sustaining the State's objection to a comment made by counsel for defendant during closing argument. Counsel stated:

> Now, Karen Fowler denied the threats but you all heard the tape. And you're going to hear it again in a minute. And the threats are in there. "I'm going to f--- you up. I'm your worst f'ing nightmare." Now, she denied doing that when she took the witness stand and testified. But they're there. And it makes you wonder why she and her family haven't been investigated in this case.

The State objected to this last comment, which objection was sustained by the trial court.

> It is well-settled that in North Carolina counsel is granted wide latitude to argue the case to the jury. Counsel is permitted to

**STATE v. FLOYD**

[143 N.C. App. 128 (2001)]

argue the facts that have been presented as well as the reasonable inferences which can be drawn therefrom. However, counsel may not argue matters to the jury which are incompetent and prejudicial by injecting his own knowledge, beliefs, or personal opinions or matters which are not supported by the evidence. Ordinarily, the control of jury arguments is left to the sound discretion of the trial court and the trial court's rulings thereon will not be disturbed on appeal absent a showing of abuse of discretion.

*State v. Jones,* 339 N.C. 114, 158-59, 451 S.E.2d 826, 850 (1994), *cert. denied,* 515 U.S. 1169, 132 L. Ed. 2d 873 (1995) (citations omitted). The comment in question appears to have been an attempt by counsel to express to the jury his opinion that the evidence presented was sufficient to implicate Karen's sons in the murder of Linda. We can only assume that the trial court found this comment to be prejudicial and not supported by the evidence, and we are not persuaded that this conclusion constituted an abuse of discretion. As we have stated, the evidence purportedly implicating Karen's sons in the murder was properly excluded by the trial court because, in fact, it did no more than create mere conjecture, and did not directly link Karen's sons to the murder. Thus, the statement by counsel during closing argument sought to present an inference that could not reasonably be drawn from the evidence. Moreover, even assuming *arguendo* that sustaining the objection was error, such error standing alone would be insufficient to require a new trial. The trial lasted a total of seven days, excluding many days of jury selection and pre-trial hearings. The transcript of the trial comprises over 5,000 pages. Defendant has not shown a reasonable possibility that there would have been a different result if the State's objection to this one statement had been overruled. *See State v. Rosier,* 322 N.C. 826, 829-30, 370 S.E.2d 359, 361 (1988). This assignment of error is overruled.

**[3]** Defendant lastly contends that the "short form" murder indictment employed in this case violated his constitutional rights and deprived the trial court of jurisdiction to try him for the indicted charge of first-degree murder. Defendant acknowledges that he has raised this issue "for preservation purposes to permit further review in federal court, if necessary," and defendant readily concedes that this issue has previously been considered and rejected by our Supreme Court in *State v. Wallace,* 351 N.C. 481, 528 S.E.2d 326, *cert. denied,* 531 U.S. 1018, 148 L. Ed. 2d 498 (2000). Pursuant to the holding in *Wallace,* this assignment of error is overruled.

No error.

Judges GREENE and McCULLOUGH concur.