STATE v. MILES

[222 N.C. App. 593 (2012)]

———————————

STATE OF NORTH CAROLINA v. KEITH DONNELL MILES

No. COA11-1383

(Filed 21 August 2012)

**1. Homicide—first-degree murder—defendant as perpetrator—sufficiency of evidence**

The trial court did not err in a first-degree murder prosecution by denying defendant's motion to dismiss where defendant contended that there was insufficient evidence that he was the perpetrator. The evidence that defendant murdered the victim was circumstantial, but constituted substantial evidence from which the jury could have concluded that defendant was the perpetrator and that defendant possessed the motive, means, and opportunity to murder the victim. No singular combination of evidence, nor any finite, quantifiable amount constitutes substantial evidence. Once the court has determined that the evidence of motive and opportunity as a whole surmounts the initial benchmark of sufficiency, the task of assessing the value and weight of the evidence is for the jury.

STATE v. MILES

[222 N.C. App. 593 (2012)]

**2. Appeal and Error—preservation of issues—issue not pursued**

Defendant abandoned for appellate review the issue of whether two of the victim's acquaintances could have been the perpetrators of the crime where the State's motion *in limine* was not definitively ruled upon during trial, defendant did not make an offer of proof or explanation of evidence that would have supported the conjecture offered in his brief, and defendant never again raised the issue.

**3. Appeal and Error—preservation of issues—discretionary review**

An argument concerning the guilt of another was not properly preserved for appellate review but was reviewed under Appellate Rule 2.

**4. Evidence—guilt of another—evidence excluded—no error**

Evidence implicating someone else and exonerating defendant was properly disallowed where defendant offered only conjecture as to the other person's actions and the State refuted this claim with positive and uncontradicted evidence exculpating the other person. Defendant did not meet his burden of showing a reasonable possibility of a different result without the evidence by simply enumerating possible factual scenarios.

**5. Homicide—first-degree murder prosecution—second-degree murder instruction refused—no error**

The trial court did not err in a first-degree murder prosecution by refusing defendant's request for a charge on second-degree murder where all of the evidence supported the jury's conclusion that defendant murdered the victim with malice and after premeditation and deliberation, and defendant proffered no evidence supporting the submission of second-degree murder.

Judge CALABRIA dissenting.

Appeal by defendant from judgment entered 16 March 2011 by Judge Ronald E. Spivey in Wilkes County Superior Court. Heard in the Court of Appeals 24 May 2012.

**STATE v. MILES**

[222 N.C. App. 593 (2012)]

*Attorney General Roy Cooper, by Assistant Attorney General Derrick C. Mertz, for the State.*

*M. Gordon Widenhouse, Jr., for defendant appellant.*

McCULLOUGH, Judge.

On 16 March 2011, Keith Donnell Miles ("defendant"), was convicted of the first-degree murder of Jonathan Wayne Whitmore ("victim") by a Wilkes County jury. The trial court sentenced defendant to life imprisonment without parole. Defendant now appeals. After a complete and careful review of the record, we find the trial court committed no error.

## I.  Facts and Procedural Background

On 14 September 2009, a Wilkes County grand jury returned an indictment charging defendant with the first-degree murder of the victim. This matter came to trial before a jury at the 7 March 2011 Special Session of the Superior Court for Wilkes County.

The relevant evidence produced at trial tended to show the following: The victim owned a business, Foothills Environmental ("Foothills"), which performed demolition and asbestos abatement. Around July 2007, Foothills hired defendant as its subcontractor to perform demolition work on a number of projects for North Carolina Central University ("NCCU"). At the time of the murder, Foothills had not yet completed the necessary paperwork for OSHA and NCCU had not yet remitted payment to Foothills for the work performed. As a result, the victim owed defendant approximately $41,000.00— $42,000.00 for his subcontracting work on these projects.

Defendant began contacting NCCU representatives demanding his payment around September October 2007. In summer 2007, defendant began calling the victim's cellular and home phones demanding payment. Defendant visited the victim's home in late September 2007 and, two weeks before the victim's murder, a neighbor witnessed defendant again visit the victim. Between 20 September 2007 and 18 October 2007, defendant called the victim's home or cellular phone numbers at least 94 separate times, including 7 separate times on 16 October 2007, 11 separate times on 17 October 2007, and 7 separate times on 18 October 2007. After 18 October 2007, defendant never again contacted the victim or either of the NCCU agents demanding payment.

On 18 October 2007, the evening of the murder, the victim returned home from a job in Greensboro around 6:30 p.m. and picked

up his daughters for dinner. Ms. Whitmore was not expecting her husband that night, but greeted her family at the door around 7:30 p.m. and retired to the living room with her daughters. The victim went outside and told his family that he would "be right back." The victim had his work gear with him at his truck.

At some time after 7:30 p.m., Ms. Whitmore and her daughters heard a load "roaring sound" outside the window, which they described as a "roaring" of an engine. One of the victim's daughters looked out the window and witnessed "what looked like a big tour bus" with orange lights at the top and the bottom. She also described the vehicle as big and box-like, similar to a bus, U-Haul, or R.V. Defendant's wife owned an R.V. matching this description with similar amber lights, which defendant later sold in December 2007. When the R.V. was recovered in Georgia two years later, a section of carpet had been removed and replaced, a bleach stain was found near the driver's side couch, and a bloodstain not matching the victim's DNA was found.

After the vehicle drove by, Ms. Whitmore and her daughters noticed that the victim was not home. Ms. Whitmore noticed that the door was unlocked, the victim's work vehicle was still outside, and the victim's keys were on the picnic table outside. Around 8:00 p.m., Ms. Whitmore and her daughters began calling the victim, the victim's son, and family friends inquiring as to the victim's whereabouts. Ms. Whitmore also called defendant and left him voicemails. Defendant's cellular records indicated that he did not pick up Ms. Whitmore's calls, but listened to her voicemails almost immediately after she recorded them. While on the phone with her sister around 4:30 a.m., Ms. Whitmore received a call from defendant's number and an unidentified voice asked why she had been calling. Ms. Whitmore pleaded for defendant to return her husband, but the voice stated that defendant had been in the hospital all night.

The victim's neighbor, Dorothy Adams, discovered the body the morning of 19 October 2007, at approximately 7:15 a.m. The body was discovered approximately 100 feet from the rear of the Whitmores' home and 77 feet from the nearest light pole, positioned down a slope from the roadside and in an area of low shrubs near a dogwood tree. Mrs. Adams slept outside in her gazebo, about 150 feet away from where the body was found, from 10:00 p.m. to 4:00 a.m. and had not heard any loud or unusual sounds during that time.

The autopsy showed that the victim died of a single gunshot wound to the back of his head. The wound was located towards the

middle of the victim's skull. Gunshot residue analysis revealed that the gun was not pressed against the victim's head, but was no more than one inch from it. The bullet that killed the victim could have been from a 9 millimeter, 10 millimeter, .38 millimeter, or possibly a .40 millimeter firearm, but not a .22 millimeter, .32 millimeter, or a .45 millimeter gun. The victim also had a scrape on his face and on the back of his right arm and a blood alcohol content of .11.

At trial, the medical examiner who performed the autopsy testified that based on the varying development of rigor mortis in each individual, the victim's actual time of death was difficult to pinpoint. A local medical examiner who filled out a written request for autopsy form but who did not perform the autopsy or testify at trial recorded the estimated time of death as somewhere between 8:00 p.m. and 9:00 p.m. The police discovered a .40 caliber shell casing at the scene. Detectives later searched the victim's truck and defendant's vehicles, but found no physical evidence connected to the crime. Police did not search the Whitmore home.

Detectives interviewed defendant on 19 October 2007, at approximately 3:00 p.m. and discovered that defendant had admitted himself to Duke Hospital at 4:26 a.m. on 19 October and again about ten hours later. Defendant first told detectives that he had worked in Raleigh until about 5:00 p.m. the day before, but later changed his statement and said that he was in Rocky Mount all evening and did not return home to Durham until 8:00 p.m. On the morning of the murder, defendant left the following voicemail on the victim's machine:

> Jonathan, Jonathan this is Keith. I have been calling you. You know I have been calling. Now, I am going to get me a lawyer, but it ain't going to be to collect my money. And you will see me. You need to call me. You done pissed me the f--k òff. And g--d--nit, you need to f-----g call me. Now, I am going to tell you, I don't give a f--k about living. If you want to [live], you need to g--d--n pay me my m-----f-----g money. And this is Keith m-----f------g Miles. And I swear to God, when I see you, you're going to know it. I mean that s--t. M-----f-----r, you'd better call me. Do you hear me? You know, you had better check the g--d--n message. Ain't a d--n thing you can do in this world to stop me from getting a hold of you. I done told you this s--t, and I tried to g—d--n keep my patience with you but you want to play with me. M-----f----r, they going to pay you, you going to pay me. I don't give a f--k. You're going to pay me.

On the afternoon of the murder at 3:23 p.m., defendant called Ms. Whitmore looking for the victim, and told her "that when [the victim] doesn't communicate we are going to have problems," that defendant needed "to come up there" to "straighten this mess out," that defendant was owed $42,000.00, and again that defendant was going to "come up there and get [the victim]."

At trial, the State called an FBI Special Agent who testified as to defendant's whereabouts on 18 October 2007, which were pinpointed by over 100 cellular phone calls. Defendant consistently utilized cellular phone towers in the Raleigh-Durham area in the morning and early afternoon, towers in the Durham area in the late afternoon, and between 4:00 p.m. and 7:00 p.m., towers indicating a progression westbound. Beginning at 7:23 p.m., defendant utilized one of the three cellular towers in the Wilkesboro area, thus placing him in the vicinity of the victim's home and scene of the murder. Defendant made a four-second call to the victim's work phone at 7:23 p.m. through a Wilkesboro tower. Following that call was a 12-minute gap. Beginning again at 7:35 p.m. and through 7:46 p.m. defendant made a series of calls to his wife, family members, and a friend, first utilizing towers in the Wilkesboro area, then towers indicating a progression east. Beginning at 7:46 p.m. and through 7:55 p.m., defendant used towers crossing the Wilkes County line. Defendant made 22 subsequent calls from 8:00 p.m. to 11:00 p.m. which indicated defendant was progressing eastward through Winston-Salem, Greensboro, and finally to Durham.

The State presented the testimony of Alfreddie Roberson, a friend of defendant's since 2000. In 2009, Roberson entered into a plea agreement with federal prosecutors to provide truthful information regarding this case in return for immunity and a sentence reduction. Roberson testified he knew that the victim owed defendant and that defendant had called and visited the victim. Additionally, Roberson testified defendant explicitly stated he was going to drive to the victim's house in his R.V. and kill the victim if he did not receive his money. Roberson stated that defendant kept a handgun, the size of a 9 millimeter or a .45 caliber, in the door of his truck. The State offered additional evidence corroborating Roberson's testimony.

At the close of the State's evidence, defendant moved to dismiss the case for insufficient evidence. Defendant renewed his motion at the close of all the evidence. The trial court instructed the jury on only first-degree murder, and on 16 March 2011, the jury returned a unanimous guilty verdict. Thereafter, defendant moved for a dismissal notwithstanding the verdict and gave oral notice of appeal. As

required by statute, defendant was sentenced to life imprisonment without the possibility of parole. On 16 March 2011, defendant filed written notice of appeal pursuant to our Rules of Appellate Procedure. After a complete and careful review of the record, the transcript, and the arguments presented by the parties, we find the trial court committed no error.

## II. Analysis

### A. *Substantial Evidence of Defendant as the Murderer*

[1] Defendant first contends that the trial court erred in denying his motion to dismiss for insufficiency of the evidence. Specifically, defendant argues the State failed to present sufficient evidence from which the jury could conclude that defendant was the perpetrator of the offense. Additionally, defendant contends the State presented insufficient evidence of his motive, opportunity, and means to commit the murder. We disagree.

This Court reviews the trial court's denial of a motion to dismiss *de novo* and views the evidence in the light most favorable to the State, giving the State every reasonable inference therefrom, and resolving any contradictions or discrepancies in the State's favor. *State v. Bagley*, 183 N.C. App. 514, 523, 644 S.E.2d 615, 621 (2007); *State v. Benson*, 331 N.C. 537, 544, 417 S.E.2d 756, 761 (1992). When reviewing a defendant's motion to dismiss, this Court determines only whether there is substantial evidence of (1) each essential element of the offense charged and of (2) the defendant's identity as the perpetrator of the offense. *See State v. Lowry*, 198 N.C. App. 457, 465, 679 S.E.2d 865, 870 (2009). Whether the evidence presented at trial is substantial evidence is a question of law for the court. *See State v. Earnhardt*, 307 N.C. 62, 65 66, 296 S.E.2d 649, 651 (1982). "Substantial evidence is that amount of relevant evidence necessary to persuade a rational juror to accept a conclusion." *State v. Mann*, 355 N.C. 294, 301, 560 S.E.2d 776, 781 (2002); *see State v. Smith*, 300 N.C. 71, 78 79, 265 S.E.2d 164, 169 (1980). Substantial evidence simply means that "the evidence must be existing and real, not just seemingly or imaginary." *State v. Powell*, 299 N.C. 95, 99, 261 S.E.2d 114, 117 (1980).

Whether the evidence presented is direct or circumstantial, the test for sufficiency of the evidence is the same. *See State v. Vause*, 328 N.C. 231, 237, 400 S.E.2d 57, 61 (1991). "Circumstantial evidence may withstand a motion to dismiss and support a conviction even when the evidence does not rule out every hypothesis of innocence." *State v. Stone*, 323 N.C. 447, 452, 373 S.E.2d 430, 433 (1988). Then, it

is for the jury to resolve any contradictions or discrepancies in the evidence and "decide whether the facts, taken singly or in combination, satisfy [it] beyond a reasonable doubt that the defendant is actually guilty." *State v. Taylor*, 337 N.C. 597, 604, 447 S.E.2d 360, 365 (1994) (internal quotation marks and citation omitted).

Where, as here, defendant does not dispute that the victim died by virtue of a criminal act, asserting only that the evidence presented was insufficient to support a reasonable finding that defendant was the perpetrator of the offense, we review the evidence for "proof of motive, opportunity, capability and identity, all of which are merely different ways to show that a particular person committed a particular crime." *State v. Bell*, 65 N.C. App. 234, 238, 309 S.E.2d 464, 467 (1983), *aff'd*, 311 N.C. 299, 316 S.E.2d 72 (1984). Where the evidence raises only a suspicion or conjecture as to the defendant's identification as the perpetrator, no matter how strong, the motion to dismiss should be allowed. *State v. Hayden*, _____ N.C. App. _____, _____, 711 S.E.2d 492, 494, *disc. review denied*, 365 N.C. 349, 717 S.E.2d 737 (2011). "[E]vidence of *either* motive or opportunity alone is insufficient to carry a case to the jury." *Bell*, 65 N.C. App. at 238 39, 309 S.E.2d at 467. However, this Court must assess the quality and strength of the evidence as a whole. *See id.* Whether the State has presented sufficient evidence to identify defendant as the perpetrator of the offense is not subject to "an easily quantifiable 'bright line' test." *See id.* at 239, 309 S.E.2d at 468.

In the instant case, the only evidence adduced at trial tending to show defendant murdered the victim was circumstantial. Nevertheless, under the standards set out above, we hold the State produced substantial evidence from which the jury could conclude that defendant was the perpetrator of the offense and that defendant possessed the motive, means, and opportunity to murder the victim. The victim owed defendant approximately $41,000.00—$42,000.00 for a subcontracting job performed several months before the murder. Defendant persistently contacted the victim over the summer demanding his money and between 20 September 2007 through 18 October 2007, defendant called the victim at least 94 separate times. Additionally, Alfreddie Roberson testified that defendant, defendant's business, and defendant's family were experiencing financial troubles due to the stagnant nature of the current economy. Thus, a rational juror could reasonably conclude that defendant's strong financial interest in receiving payment from the victim constituted a financial motive.

Further, on the morning of the murder, defendant left the victim an angry voicemail stating that he would be retaining a lawyer, but not for the purposes of collecting his money, and threatening that the defendant would ultimately get "a hold of" the victim. A rational juror could reasonably infer that defendant was intentionally threatening the victim's life. Similarly, Roberson stated that on the morning of the murder, defendant confided that if he did not obtain his money soon, he would kill the victim. Roberson testified that later that same day, defendant told him that he was going to Wilkesboro to either collect his money from the victim or kill the victim. Roberson also testified that he had previously seen defendant with a handgun, the size of a 9 millimeter or .45 caliber firearm, which defendant stowed in the door of his truck. Roberson's testimony constituted positive evidence of defendant's motive and intention to murder the victim, but also established a question of fact as to whether defendant possessed a firearm equivalent to the .40 caliber murder weapon, which would establish the means by which defendant perpetrated the crime.

Lastly, the State presented the testimony of the victim's wife and the victim's neighbor who witnessed defendant visit the victim's house on two separate occasions, in September 2007 and two weeks before the murder. The victim's wife and daughter also observed a vehicle similar to an R.V. owned by defendant's wife in front of their home, an observation which was corroborated by cellular phone records. Notably, defendant's phone records showed that between the times of 7:23 p.m. and 7:46 p.m. defendant utilized one of three cell phone towers in Wilkesboro, thereby pinpointing his location to Wilkesboro, in the vicinity of the victim's home and site of the crime. Taking the State's evidence as a whole and resolving all contradictions in favor of the State, a reasonable juror could conclude that defendant was in the vicinity of the victim's home and the scene of the crime at the time of death, thereby establishing defendant's opportunity to commit the murder. Additionally, when first interviewed by the police defendant denied being in Wilkesboro.

Defendant cites a number of cases to support his contention. Defendant first argues that *State v. Lee*, 294 N.C. 299, 240 S.E.2d 449 (1978), and *State v. Furr*, 292 N.C. 711, 235 S.E.2d 193 (1977) are instructive. In *Lee*, the victim was discovered in a wooded area a few miles from the defendant's home with two small bullet holes in the left side of her neck. *See Lee*, 294 N.C. at 300, 240 S.E.2d at 449. The evidence tended to show that the defendant was seen on numerous occasions in possession of a .25 caliber pistol that was never linked

to the crime; shots were heard in the vicinity of the scene of the crime; and defendant told a witness he was planning on killing the victim. *See id.* at 301 02, 240 S.E.2d at 450. Our Supreme Court determined that, although the State's evidence tended to show defendant's malice and motive to commit the murder, and created a "strong suspicion" of defendant's guilt because the State could not conclusively place the defendant at the murder scene, the evidence was not substantial to the point of excluding the "rational conclusion that some other unknown person may be the guilty party." *Id.* at 303, 240 S.E.2d at 451 (internal quotation marks and citation omitted).

In *Furr*, the State presented ample evidence that the defendant harbored ill will towards his wife, the victim, and that the defendant actively sought his wife's death. *Furr*, 292 N.C. at 718 19, 235 S.E.2d at 198. One witness testified that he may have seen the defendant with the victim on the day of the murder, but little further evidence established the events that transpired on that day. *See id.* at 717, 235 S.E.2d at 197. Several guns were found in the defendant's and victim's homes, but none were linked to the murder. *See id.* No physical evidence was presented. *See id.* Our Supreme Court held the State proved the defendant's motive to murder his wife, but failed to prove opportunity or the remaining elements that would positively identify him as the perpetrator. *See id.* at 717, 235 S.E.2d at 198. Instead, the Court resolved the case based on the law of principals and accessories to first-degree murder. *See id.* at 719, 235 S.E.2d at 198.

Both *Lee* and *Furr* are easily distinguishable from the present case. In *Lee*, the Court could not hold "that the State failed to offer substantial evidence that" the defendant was the murderer where no evidence placed him at the scene of the crime. *See Lee*, 294 N.C. at 303, 240 S.E.2d at 451. As we concluded above, in the present case, the State presented substantial evidence of defendant's motive and his exact whereabouts around the time of the murder. In *Furr*, the Court decided the defendant's guilt by an entirely different body of law. *See Furr*, 292 N.C. at 719, 235 S.E.2d at 198. Further, in *State v. Lowry*, 198 N.C. App. 457, 679 S.E.2d 865 (2009), this Court recently reviewed both *Lee* and *Furr* and recounted that in both cases, the State produced evidence of motive, but not opportunity. *See id.* at 467, 679 S.E.2d at 872. Thus, defendant's attempts to analogize this case to *Lee* and *Furr* in order to overturn his conviction fall short.

Defendant next contends that *State v. Hayden*, ____ N.C. App. ____, 711 S.E.2d 492 (2011), is indistinguishable. In *Hayden*, the vic-

tim was discovered lying beside his still-running vehicle on the side of the road in a wooded area. The victim died from a gunshot wound to the head, but the handgun found on the front seat of his car was not the murder weapon. *See id.* at ____, 711 S.E.2d at 493. The defendant had a history of threatening the victim, which indicated the defendant's ill will towards the victim and his intention and motivation to murder. *See id.* at ____, 711 S.E.2d at 494 95. The Court held that while the defendant's history of threats or physical abuse constituted evidence of motive, by not conclusively placing the defendant at the scene of the crime at the time of the murder, the State failed to *propound substantial evidence of the defendant's means or opportunity to commit the crime. See id.* at ____, 711 S.E.2d at 496 97.

*Hayden* is distinguishable from this case. Here, defendant was placed in the immediate vicinity of the scene of the crime by real-time cellular phone tracking. Additionally, the victim's family testified to observing a vehicle in their neighborhood shortly after the time of the victim's disappearance, and within the time range the defendant was placed in Wilkesboro, similar to defendant's wife's R.V. Therefore, defendant's attempts to analogize this case to *Hayden* are unsuccessful.

Defendant broadly contends that should this Court hold the trial court committed no error, we would run afoul of the general rule espoused in *State v. Powell, State v. Bell,* and *State v. Lee,* that where evidence merely arouses a suspicion or conjecture of defendant's guilt, another party may reasonably be identified as the murderer and thus defendant's motion to dismiss must be granted. *See Lee,* 294 N.C. at 303, 240 S.E.2d at 451. However, as to his remaining arguments, defendant himself freely engages in speculation. Defendant argues that, because the State failed to establish a connection between defendant and the murder weapon, failed to present DNA evidence or other physical evidence, such as blood in defendant's R.V., failed to explain the victim's elevated blood alcohol content, and failed to show that defendant possessed any of the victim's property or had any of the victim's blood on his person, the record lacks substantial evidence identifying defendant as the perpetrator of the crime. Defendant contends that because solely circumstantial evidence links him to the crime, circumstances may exist that exonerate defendant.

The case law clearly shows that no singular combination of evidence, nor any finite, quantifiable amount of evidence constitutes substantial evidence. *See Bell,* 65 N.C. App. at 239, 309 S.E.2d at 468. Once the court has determined that the evidence of motive and opportunity as a whole surmounts the initial benchmark of suffi-

ciency, the task of assessing the value and weight of that evidence is for the jury. Factually, this Court does not interpret a lack of certain types of evidence as somehow negating defendant's guilt.

Finally, defendant strains to convince this Court that *State v. Pastuer*, 205 N.C. App. 566, 697 S.E.2d 381 (2010), *aff'd by an equally divided court*, 365 N.C. 287, 715 S.E.2d 850 (2011), is instructive. Because we distinguish *Pastuer*, we need not address the issue of *Pastuer*'s lack of precedential value. In *Pastuer*, defendant's wife's body was discovered wrapped in a blue tarp in the trunk of her car approximately 100 yards from a highway. *See Pastuer*, 205 N.C. App. at 268, 697 S.E.2d at 383. At trial, the State presented abundant evidence tending to show defendant's history of hostility towards his estranged wife sufficient to prove motive. *See id.* at 572, 697 S.E.2d at 385 86. However, the State introduced little physical evidence linking the defendant to the crime scene and little circumstantial evidence as to the defendant's whereabouts around the time of the victim's disappearance and death. *See id.* Contrasted to the instant case, defendant's whereabouts at the time of the murder were proved by positive evidence of his cellular phone records and were confirmed by eyewitness testimony. Thus, *Pastuer* is inapposite.

While the State persuasively argues that this case is similar to *State v. Barnett*, 141 N.C. App. 378, 540 S.E.2d 423 (2000), *aff'd*, 354 N.C. 350, 554 S.E.2d 644 (2001); *State v. Bostic*, 121 N.C. App. 90, 465 S.E.2d 20 (1995); *State v. Ledford*, 315 N.C. 599, 340 S.E.2d 309; *State v. Parker*, 113 N.C. App. 216, 438 S.E.2d 745 (1994); *State v. Patel*, ____ N.C. App. ____, 719 S.E.2d 101 (2011), *disc. review denied*, ____ N.C. ____, 720 S.E.2d 395 (2012), as well as *State v. Stone*, 323 N.C. 447, 373 S.E.2d 430 (1988), ultimately, we find *State v. Carver*, ____ N.C. App. ____, 725 S.E.2d 902 (2012), controlling. In *Carver*, defendant and his cousin were fishing at a spot a short distance from the crime scene around the time of the murder. *See Carver*, ____ N.C. App. at ____, 725 S.E.2d at 904. The defendant denied his presence at the scene, but his alibi was refuted by positive DNA analysis linking him to the victim's vehicle. *See id.* This Court held the trial court committed no error in denying defendant's motion to dismiss and that, while the State failed to show the defendant's motive to murder the victim, defendant's presence near the scene of the crime during the time in which the murder was committed, as well as the positive evidence linking him to the scene of the crime, taken in the light most favorable to the State was sufficient to establish his identity as the murderer. *See id.*

In the instant case, as in *Carver*, defendant's false alibi was contradicted by positive evidence placing him in the vicinity of the murder around the victim's time of death. *See id.* As we found above, defendant's cellular phone records and the testimony of the victim's family that they observed what appeared to be an R.V. similar to defendant's wife's, taken in the light most favorable to the State, constitute substantial opportunity evidence placing defendant near the scene of the crime around the time of the victim's murder. Therefore, we hold defendant's arguments are without merit and the trial court committed no error in denying defendant's motion to dismiss.

### B. Excluded Evidence of Alternate Perpetrators

[2] We initially note that, although in his brief defendant mentions the argument that the "Leach brothers," referring to two of the victim's acquaintances, could have been the perpetrators of the crime, the State filed a motion *in limine* on this matter, which the court took under advisement and did not definitively rule on during trial. Defendant did not pursue this issue, never again raised this issue, nor did he at the time of the trial court's initial ruling make any offer of proof or explication of evidence that would support the conjecture offered in his brief. Therefore, we hold defendant abandoned this issue for appellate review. *See State v. Ryals*, 179 N.C. App. 733, 740 41, 635 S.E.2d 470, 475 (2006) ("In order to preserve an argument on appeal which relates to the exclusion of evidence, . . . the defendant must make an offer of proof so that the substance and significance of the excluded evidence is in the record.") (internal quotation marks and citation omitted).

[3] Next, we address the preliminary issue of whether defendant properly preserved his constitutional claims for appellate review. Defendant claims the trial court erred by excluding evidence that Rachael Whitmore, the victim's wife, possessed the motive and opportunity to murder her husband, thereby casting a reasonable doubt on the guilt of defendant. Defendant claims the ruling violated his constitutional rights to present a defense, to confront and examine witnesses called against him, and to offer for the jury evidence tending to support his version of the facts.

Prior to trial, the State filed a motion *in limine* that effectively prohibited defendant from questioning Ms. Whitmore on her husband's alleged extramarital affair and from presenting an argument and eliciting testimony from Ms. Whitmore that would imply her guilt and cast doubt on the guilt of defendant. The trial court took the

motion under advisement awaiting Ms. Whitmore's *voir dire* and further proffer from defendant. After a complete interview with Ms. Whitmore, defendant proffered the evidence that Ms. Whitmore may have murdered her husband based on anger for her husband's infidelity, jealousy of his mistress(es), and the financial motive of receiving the benefits of his life insurance policy. Thereafter, the trial court made a definitive ruling granting the State's motion. Defendant did not raise his constitutional objections at that point, nor did he object to the alleged constitutional violations at any time during the remainder of the trial.

After a careful review of the record and the applicable case law, we hold defendant has failed to preserve his constitutional claim for appellate review. Further, in his brief, defendant did not "specifically and distinctly" allege plain error nor did he request plain error review in accordance with the case law and our Rules of Appellate Procedure. N.C. R. App. P. 10(a)(4). *See State v. Lawrence*, ____ N.C. ____, ____, 723 S.E.2d 326, 334 (2012) (holding that "the plain error standard of review applies on appeal to unpreserved instructional or evidentiary error," but may be applied where there is danger of prejudice amounting to a "miscarriage of justice" and " 'cautiously and only in the exceptional case' " ) (citation omitted); *see also State v. Towe*, ____ N.C. ____, ____, ____ S.E.2d ____, ____ (No. 121PA11, 14 June 2012 at 10 11). We fail to see the possibility of prejudice amounting to a miscarriage of justice and decline to review defendant's constitutional claims.

The standards for the admissibility of evidence are governed by the evidentiary rules of relevance, not the strictures of the Constitution. Defendant's theory of the case is that the trial court erred in excluding evidence to be adduced at trial from Ms. Whitmore that was relevant under Rule 401 of the North Carolina Rules of Evidence. Defendant claims the excluded evidence passes the test of Rule 401 in that it has the tendency to make the existence of a fact that is of consequence to the determination of the action—whether defendant was the perpetrator of the offense—less probable than it would be without the evidence. N.C. Gen. Stat. § 8C-1, Rule 401 (2011). Defendant argues the evidence implicating Ms. Whitmore and exonerating himself is relevant beyond the point of mere speculation and conjecture.

Defendant proffered an argument on this issue at the time the trial court took the motion *in limine* under advisement and again at the time the trial court made its definitive ruling. Despite defendant's

failure to enunciate the proper standard of review governing evidentiary errors, we exercise our power under Rule 2 of our Appellate Rules of Procedure and review the trial court's exclusion of alternate perpetrator evidence under our state evidence code for prejudicial error.

**[4]** When the trial court excludes evidence based on its relevancy, a defendant is entitled to a new trial only where the erroneous exclusion was prejudicial. *See State v. Wilkerson*, 363 N.C. 382, 415, 683 S.E.2d 174, 194 (2009), *cert. denied*, ____ U.S. ____, 176 L. Ed. 2d 734 (2010). A defendant is prejudiced by the trial court's evidentiary error where there is a "reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises." N.C. Gen. Stat. § 15A-1443(a) (2011). Defendant bears the burden of showing prejudice. *See Wilkerson*, 363 N.C. at 415, 683 S.E.2d at 194. Here, defendant has not shown a reasonable possibility the jury would have reached a different result had further evidence implicating Ms. Whitmore been admitted.

Evidence casting doubt on the guilt of the accused and insinuating the guilt of another must be relevant in order to be considered by the jury. *See State v. Cotton*, 318 N.C. 663, 667, 351 S.E.2d 277, 280 (1987). Because the relevancy standard in criminal cases is "relatively lax," "[a]ny evidence calculated to throw light upon the crime charged should be admitted by the trial court." *State v. McElrath*, 322 N.C. 1, 13, 366 S.E.2d 442, 449 (1988) (internal quotation marks and citation omitted). However, the general rule remains that the trial court has great discretion on the admission of evidence. *State v. Lassiter*, 160 N.C. App. 443, 450, 586 S.E.2d 488, 494 (2003). "Evidence that another committed the crime for which the defendant is charged generally is relevant and admissible as long as it does more than create an inference or conjecture in this regard." *Cotton*, 318 N.C. at 667, 351 S.E.2d at 279. Rather, it "must point directly to the guilt of the other party." *Id.* The evidence must simultaneously implicate another and exculpate the defendant. *See State v. Floyd*, 143 N.C. App. 128, 132, 545 S.E.2d 238, 241 (2001).

Defendant cites numerous cases supporting his contention, which we now distinguish in turn. In *State v. Israel*, 353 N.C. 211, 539 S.E.2d 633 (2000), the defendant proffered evidence that a specific person had both the opportunity to kill the victim—the third party was identified on video surveillance entering and exiting the victim's apartment—and the motive to murder the victim. *See id.* The Court held that not only was the evidence of defendant's guilt "equivocal," but that because of the substantial evidence incriminating the third

party, there was a reasonable possibility that had the jury considered the alternate perpetrator evidence, a different result would have been reached. *See id.* In both *Cotton* and *State v. Sneed*, 327 N.C. 266, 393 S.E.2d 531 (1990), the exclusion of conflicting eyewitness testimony exonerating the defendants was deemed prejudicial error. *See Cotton*, 318 N.C. at 667, 351 S.E.2d at 280; *Sneed*, 327 N.C. at 268, 274, 393 S.E.2d at 532 33, 535. In *McElrath*, a murder case based solely on circumstantial evidence, the trial court excluded a map that arguably indicated an alternate murder plan inconsistent with the murder plan the defendant could have been involved in. *See McElrath*, 322 N.C. at 12 14, 366 S.E.2d at 448 49. A jury could have concluded from viewing the alternate plan that a different group of assailants had the motive and opportunity to commit the murder. *See id.*

We believe the facts of the instant case are distinguishable from this line of cases. Unlike in *Israel, Cotton,* and *Sneed,* where alternate perpetrators were positively identified and both direct and circumstantial evidence demonstrated the third parties' opportunity and means to murder, this defendant proffers merely conjecture as to Ms. Whitmore's possible actions—she need only step outside her home to murder her husband—whereas the State contradicts these speculations with the explicit testimony of Ms. Whitmore's daughters that they had been with their mother all night. Further, the State notes that no direct, physical evidence indicates Ms. Whitmore's guilt.

Defendant claims the jury could infer that Ms. Whitmore possessed the motive to murder her husband from the following facts: knowledge of her husband's infidelity or infidelities, their pending divorce, and the promise of a $75,000.00 life insurance policy payout. Defendant claims the jury could infer that Ms. Whitmore possessed the opportunity and means to murder her husband from the following facts: Ms. Whitmore need only step outside to accomplish the task, the family did not hear a gunshot, the local medical examiner's estimated time of death did not coincide with the passing of the R.V. and the victim's blood alcohol content, and no physical or DNA evidence linked Ms. Whitmore to any murder weapon. Defendant argues this evidence casts doubt on his guilt by offering only negative evidence and conjecture, whereas the State refutes this claim with positive and uncontradicted evidence exculpating Ms. Whitmore. Moreover, in simply enumerating possible factual scenarios in his briefs, defendant has not met his burden of showing a reasonable possibility that a different result would have been reached had the purported inculpatory evidence been admitted. Accordingly, we hold defendant's argument

has no merit and the trial court committed no error in disallowing further evidence or argument implicating Ms. Whitmore in the murder of her husband.

### C.  Lesser Included Offense of Second-Degree Murder

[5]  Defendant argues the trial court erred by not instructing the jury on the lesser included offense of second-degree murder. Defendant contends that the State failed to present substantial evidence from which a juror could conclude that after premeditation and deliberation defendant formed the specific intent to murder the victim. Defendant specifically argues that, because the victim had an elevated blood alcohol reading and a wound on his face, the evidence tended to show that a fight occurred immediately before the murder. We disagree and hold the trial court committed no error in refusing defendant's request for a charge on second-degree murder.

A defendant properly preserves error under Rule 10(b)(2) of the North Carolina Rules of Appellate Procedure warranting this Court's full review of the record on appeal by requesting a specific instruction at the charge conference, notwithstanding defendant's failure to formally object to the charge when given. *See State v. Ross,* 322 N.C. 261, 265, 367 S.E.2d 889, 891 (1988). When reviewing the record to determine whether the denial of defendant's request was error, we ask whether, viewing the evidence in the light most favorable to the State, a reasonable juror could conclude that after premeditation and deliberation defendant formed the specific intent to murder the victim. *Patel,* ____ N.C. App. at ____, 719 S.E.2d at 109 10. Defendant is entitled to an instruction on a lesser included offense only where the evidence adduced at trial supports the reasonable inference that the jury could find the defendant guilty of the lesser offense and acquit him of the greater. *See State v. Leazer,* 353 N.C. 234, 237, 539 S.E.2d 922, 924 (2000).

First-degree murder is "the unlawful killing of a human being with malice, premeditation and deliberation." *Vause,* 328 N.C. at 238, 400 S.E.2d at 62 (internal quotation marks and citation omitted). "Murder in the second degree is the unlawful killing of a human being with malice but without premeditation and deliberation" and is a lesser included offense of first-degree murder. *State v. Flowers,* 347 N.C. 1, 29, 489 S.E.2d 391, 407 (1997). "[M]alice is presumed where the defendant intentionally assaults another with a deadly weapon, thereby causing the other's death." *State v. McNeill,* 346 N.C. 233, 238, 485 S.E.2d 284, 287 (1997). Premeditation and deliberation are processes

of the mind and are not easily amenable to proof by direct evidence. *See Vause*, 328 N.C. at 238, 400 S.E.2d at 62. Rather, premeditation and deliberation are usually established by circumstantial evidence. *See id.* However, "mere speculation is not sufficient to negate evidence of premeditation and deliberation." *Gary*, 348 N.C. at 524, 501 S.E.2d at 67.

Premeditation means the act was "thought out beforehand for some length of time, however short." *State v. Hunt*, 330 N.C. 425, 427, 410 S.E.2d 478, 480 (1991). "[D]eliberation means an intention to kill, executed by defendant in a 'cool state of blood' in furtherance of a fixed design or to accomplish some unlawful purpose." *State v. Jones*, 303 N.C. 500, 505, 279 S.E.2d 835, 838 (1981). However, "cool state of blood" does not mean "an absence of passion and emotion." *State v. Faust*, 254 N.C. 101, 108, 118 S.E.2d 769, 773 (1961).

Premeditation and deliberation may be inferred by: lack of provocation on the part of the victim, the defendant's conduct, statements, and threats before the murder, and past ill will between the parties, *State v. Gladden*, 315 N.C. 398, 430 31, 340 S.E.2d 673, 693 (1986); bringing a weapon to the scene of the crime or anticipating a confrontation in which the defendant was prepared to use deadly force, *State v. Larry*, 345 N.C. 497, 514, 481 S.E.2d 907, 917 (1997); the nature of the wounds, especially a fatal gunshot wound to the back of the head, *Keel*, 337 N.C. at 476, 447 S.E.2d at 751, *Hunt*, 330 N.C. at 428, 410 S.E.2d at 481; flight from the scene, leaving the victim to die, *State v. Sierra*, 335 N.C. 753, 759, 440 S.E.2d 791, 795 (1994); and fabricating an alibi, discarding a weapon or other evidence suggesting guilt, or attempting to cover up any involvement in a crime, *State v. Chapman*, 359 N.C. 328, 376 77, 611 S.E.2d 794, 828 29 (2005), *State v. Trull*, 349 N.C. 428, 448, 509 S.E.2d 178, 191 92 (1998).

In the present case, the record supports the inference that defendant murdered the victim after premeditation and deliberation. Defendant harassed the victim over the telephone at least 94 times and visited the victim's home at least twice; defendant threatened the victim's life in a voicemail message on the afternoon of the murder; defendant declared his intention to murder the victim to a confidant; defendant and the victim were known to have a heated relationship and to have argued over payment in the past; defendant anticipated a confrontation whereby he would use deadly force while driving from Durham to Wilkesboro; defendant crafted a false alibi when questioned by the police; defendant fled the scene leaving the victim to

die; and defendant sold his wife's R.V., which the jury could infer was the vehicle defendant drove on the night of the murder, less than two months after the murder. Most notably, the victim died as a result of a gunshot wound to the center back of the head, discharged at close range, indicating that defendant not only inflicted a brutal, fatal wound on the victim with a deadly weapon, but that even if defendant and the victim were fighting at the time the shot was fired, the victim's back was to defendant and the victim was fleeing from him or turning away from a fight at the time of his death. Defendant argues the scratch on the victim and the victim's elevated blood alcohol content indicate that a fight ensued, which precipitated the murder. Even if defendant's argument had merit, "evidence that the defendant and the victim argued, without more, is insufficient to show that defendant's anger was strong enough to disturb his ability to reason" and hinder his ability to premeditate and deliberate the killing. *State v. Solomon*, 340 N.C. 212, 222, 456 S.E.2d 778, 785 (1995). In sum, defend-ant has proffered no evidence supporting the submission of second-degree murder; all the evidence in this case supports the jury's conclusion that defendant murdered the victim with malice and after premeditation and deliberation. Accordingly, we hold the trial court committed no error in failing to instruct the jury on second-degree murder.

## III. Conclusion

In conclusion, the State presented sufficient evidence from which a reasonable juror could rationally conclude that defendant possessed the motive, opportunity, and means to murder the victim and that defendant was ultimately the perpetrator of the offense. Defendant abandoned the argument that the "Leach Brothers" were possible perpetrators of the victim's murder for appellate review. Defendant did not meet his burden of showing a reasonable possibility that had the trial court allowed defendant to introduce and argue evidence implicating Ms. Whitmore as the assailant in her husband's murder, the jury would have reached a different verdict. Further, defendant did not properly preserve error in accordance with our Rules of Appellate Procedure and is barred from presenting the argument that defendant's constitutional rights were violated by the exclusion of this evidence. Finally, defendant proffered no positive uncontradicted evidence showing that defendant did not intentionally murder the victim after premeditation and deliberation. Accordingly, defendant did not show that the trial court erred by failing to instruct the jury on second-degree murder. Therefore, we hold

defendant's arguments are without merit and the trial court committed no error.

No error.

Judge STROUD concurs.

Judge CALABRIA dissents.

CALABRIA, Judge, dissenting.

I concur with the majority that the trial court properly excluded evidence that prohibited Keith Donnell Miles ("defendant") from questioning Rachel Whitmore ("the victim's wife") on certain issues by granting the State's motion *in limine*. I also concur with the majority that the court did not err by denying defendant's requested jury instruction on the lesser included offense of second-degree murder. However, I find that the trial court erred by denying defendant's motion to dismiss the first-degree murder charge. Therefore, I respectfully dissent.

At the close of the State's evidence, and again at the close of all the evidence, the trial court denied defendant's motion to dismiss. When the defendant makes a motion for dismissal, " 'the question for the Court is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of [the] defendant's being the perpetrator of such offense. If so, the motion is properly denied.' " *State v. Fritsch*, 351 N.C. 373, 378, 526 S.E.2d 451, 455 (2000) (citation omitted).

The majority correctly states that the only evidence adduced at trial tending to show defendant murdered Jonathan Whitmore ("the victim") was circumstantial. While "[c]ircumstantial evidence may withstand a motion to dismiss[,]" *State v. Stone*, 323 N.C. 447, 452, 373 S.E.2d 430, 433 (1988), " '[i]f the evidence presented is circumstantial, the court must consider whether a reasonable inference of defendant's guilt may be drawn from the circumstances.' " *Fritsch*, 351 N.C. at 379, 526 S.E.2d at 455 (citation omitted). "The law will not allow a conviction on evidence that merely gives rise to suspicion or conjecture that the defendant committed the crime." *State v. Lambert*, 341 N.C. 36, 42, 460 S.E.2d 123, 127 (1995).

"[E]vidence of *either* motive or opportunity alone is insufficient to carry a case to the jury." *State v. Bell*, 65 N.C. App. 234, 238-39, 309

S.E.2d 464, 467 (1983), *aff'd per curiam*, 311 N.C. 299, 316 S.E.2d 72, 73 (1984). "When the question is whether evidence of *both* motive and opportunity will be sufficient to survive a motion to dismiss, the answer . . . [depends on] the strength of the evidence of motive and opportunity, as well as other available evidence, rather than an easily quantifiable 'bright line' test." *Id.* at 239, 309 S.E.2d at 468.

I agree with the majority that there was sufficient evidence of motive to overcome defendant's motion to dismiss. Defendant had a financial motive and repeatedly made threatening phone calls to the victim, visited his home, and indicated to Alfreddie Roberson ("Roberson") that he would kill the victim if he did not receive the money that the victim owed him. However, evidence of motive alone is insufficient to carry a case to the jury. *Id.* at 238-39, 309 S.E.2d at 467. I find that the State produced evidence of motive, suspicion and conjecture but failed to produce sufficient evidence of opportunity to identify defendant as the perpetrator.

The State and the majority rely on cases where some physical evidence or eyewitness testimony linked the defendant to the crime scene and therefore created a reasonable inference that defendant was the perpetrator. In *State v. Carver*, which the majority finds controlling, the victim was found dead on the shore of a river beside her car. ____ N.C. App. ____, ____, 725 S.E.2d 902, 903 (2012). The only evidence that showed the defendant committed the murder was circumstantial. *Id.* at ____, 725 S.E.2d at 904. The Court held that there was sufficient evidence to deny the defendant's motion to dismiss where there was evidence that the defendant was fishing near the victim's car, close to the time of the victim's murder and despite the defendant's claims that he had not seen or touched the victim or the victim's car, positive DNA analysis found on the victim's vehicle was "sufficient to establish that the DNA could only have been left at the time the offense was committed." *Id.* at ____, 725 S.E.2d at 904-05.[1]; *see also State v. Barnett*, 141 N.C. App. 378, 384, 540 S.E.2d 423, 428 (2000) (finding sufficient evidence to survive a motion to dismiss where the defendant admitted to being at the scene and touching various items and the State also presented evidence that *shoe prints* on the floor and the victim's shirt were consistent with the shoes defendant admitted to wearing on the day of the murder); *State v. Ledford*, 315 N.C. 599, 613-14, 340 S.E.2d 309, 318-19 (1986) (finding sufficient

---

1. We note that *Carver* has been appealed to the Supreme Court of North Carolina based on a dissenting opinion.

evidence to survive a motion to dismiss where there was evidence of *defendant's boot print* in the victim's home, *a cigarette butt consistent with the defendant's blood type and brand in the home*, eyewitness testimony placing the defendant outside the victim's home at 2:00 a.m. the night of the murder and evidence defendant had in his possession approximately the same amount of money that was taken from the victim); *State v. Parker*, 113 N.C. App. 216, 223, 438 S.E.2d 745, 750 (1994) (finding sufficient evidence to survive a motion to dismiss where the State presented eyewitness testimony that the defendant was in the area on the morning of the victim's death and where the "*defendant's brand of cigarette package*" was found at the scene) (emphasis added); *State v. Patel*, ___ N.C. App. ___, ___, 719 S.E.2d 101, 107 (2011), *disc. review denied*, ___ N.C. ___, 720 S.E.2d 395, 396 (2012)(finding evidence of opportunity where the State's evidence showed that the victim called the defendant twice the day of the murder and told others she was going to his apartment, the defendant avoided other activities and his alibi was unsupported, the victim's car was located at the defendant's apartment complex, and a *fiber found in defendant's truck was consistent with fibers found under the victim's body*); *Stone*, 323 N.C. at 452-53, 373 S.E.2d at 434 (finding sufficient evidence of opportunity where the defendant "had access to a weapon and bullets which could have caused the death of the victim, had the time and opportunity to commit the murder, and *drove a car which could have made the tire tracks found at the dump site.*")(emphasis added). In *State v. Bostic*, also relied on by the State, there was no physical evidence linking the defendant to the crime scene, but there was eyewitness testimony that confirmed that the defendant assaulted the victim at the scene on the morning of the victim's death and a subsequent statement by the defendant that he killed the victim. 121 N.C. App. 90, 99, 465 S.E.2d 20, 24 (1995).

In the instant case, the State failed to produce any physical evidence or eyewitness testimony linking defendant to the murder scene. When law enforcement arrived, they found the victim's body at a distance of approximately three feet from the side of the road, and approximately one hundred feet from the victim's residence. According to Dr. Patrick Eugene Lantz, a forensic pathologist who performed the victim's autopsy, the victim died as a result of a gunshot wound to the back of the head. The gunshot residue on the victim's head indicated "that the wound was near contact or close range, not quite pressed up hard against the skin's surface, but off of it just a little bit, but definitely not more than an inch away." The State's theory at trial was that defendant was waiting at the victim's home, the

victim approached defendant's R.V. and when the victim failed to pay defendant, defendant shot him. However, there was no evidence that anyone heard a gunshot fired near the victim's home. The State claimed that the roar of defendant's R.V. masked the sound of the gunshot. However, the State's evidence also indicated that the victim's wife and daughter only heard the vehicle one time and that it was moving fast enough that the victim's wife was unable to reach the window in time to see the vehicle. Therefore, the State's theory suggests that defendant shot the victim one inch from his skull as he was driving the R.V. by the victim's house. This seems highly improbable to create a reasonable inference that defendant was the perpetrator.

A .40 caliber shell casing was also found, but there was no evidence that defendant's DNA and fingerprints were found on the shell casing recovered near the victim's body. No weapons were recovered at the scene, but the victim's wallet containing identification and cash and the victim's two cell phones were recovered. The State produced no evidence that defendant's DNA and fingerprints were found on the victim's wallet or cell phones either.

The majority contends that *Carver* controls the instant case because in both cases the defendants denied their presence at the scene, but later evidence placed them in the vicinity of the murder. However, *Carver* is distinguishable because in *Carver*, DNA was discovered linking the defendant to the victim's car. *Carver*, _____ N.C. App. at _____, 725 S.E.2d at 904. In the instant case, unlike *Carver*, there was no DNA or any other physical evidence linking defendant to the crime scene. In contrast to the cases the State relied on, in the instant case there was absolutely no physical evidence of defendant's presence at the murder scene: no DNA, no fingerprints, no footprints, no cigarette butts, no fibers and no tire tracks.

Furthermore, there were no traces of the victim found in defendant's possession or in his residence. When detectives searched defendant's residence, they did not find a murder weapon or a gun registered to defendant or anything of evidentiary value pertaining to the case. Although blood was later discovered in defendant's wife's R.V., it was confirmed that the blood did not match the victim's blood.

The majority concludes that the cases defendant cites, *State v. Lee*, 294 N.C. 299, 240 S.E.2d 449 (1978), and *State v. Furr*, 292 N.C. 711, 235 S.E.2d 193 (1977), are inapplicable because in those cases "the State presented evidence of motive, but not opportunity." *State v. Lowry*, 198 N.C. App. 457, 467, 679 S.E.2d 865, 871 (2009). However,

*Lowry's* interpretation of *Lee* conflicts with the actual language of *Lee*. The Court in *Lee* specifically found that "[t]he State's evidence in this case establishes a murder; and considered in the light most favorable to the State, shows that *the defendant had the opportunity*, means and perhaps the mental state to have committed this murder." *Lee*, 294 N.C. at 303, 240 S.E.2d at 451 (emphasis added). Therefore, we will follow the language set out in *Lee* in examining its applicability to the instant case. *See Cannon v. Miller*, 313 N.C. 324, 327 S.E.2d 888 (1985) (holding that the Court of Appeals lacked the authority to overrule decisions of the Supreme Court of North Carolina and has, instead, a "responsibility to follow those decisions, until otherwise ordered by the Supreme Court").

In addition, the majority determines that the Court in *Furr* "decided the defendant's guilt by an entirely different body of law." However, in both the instant case and in *Furr*, the issue was whether there was sufficient evidence to convict the defendant of murder. *Furr*, 292 N.C. at 719, 235 S.E.2d at 198.

In *Lee*, the Court held that the evidence showed "a brutal murder and raise[d] a strong suspicion of [the] defendant's guilt, but" that "the State failed to offer substantial evidence that the defendant was the one who shot [the victim]." *Lee*, 294 N.C. at 303, 240 S.E.2d at 451. *Lee* has been recently examined by this Court in *Patel*, where the Court recognized that in *Lee* the State was unable "to present any evidence placing the defendant with the murdered victim at the time of the murder...[and] there was no evidence linking either [the] defendant to the murder scene or tying him to the means by which the victim was killed." *Patel*, ____ N.C. App. at ____, 719 S.E.2d at 108. Similarly, in *Furr*, the Court found that there was insufficient evidence that the defendant killed his wife where there was no murder weapon in the defendant's or victim's home, none of the fingerprints from the scene matched the defendant, and the defendant was only seen in the vicinity of the victim's home for a short window of time on the morning of the victim's death. *Furr*, 292 N.C. at 717-18, 235 S.E.2d at 197-98. Just as the evidence in *Lee* and *Furr* was insufficient, the State's evidence in the instant case was also insufficient because the State presented no physical evidence linking defendant to the murder scene.

The majority contends the instant case is distinguishable from *Lee* because here there is evidence of defendant's "exact whereabouts around the time of the murder" based on Raven Whitmore's ("the victim's daughter") report that she saw vehicle similar to defendant's

wife's R.V. around the time of the victim's death and defendant's phone records placing him in Wilkesboro around the time of the murder. I disagree.

Initially, I note that the majority contends that "[t]he victim's wife and daughter...observed a vehicle similar to an R.V. owned by defendant's wife in front of their home...." However, the majority is mistaken. The victim's wife never testified that she saw an R.V. She testified that she heard a loud noise, but not that she actually saw the vehicle. Furthermore, the victim's daughter did not initially describe the vehicle as an R.V., but rather she saw what she described as a box-like vehicle that looked like a U-haul. At trial she testified about what she saw

[State]: And what did you see?

[The victim's daughter]: I seen [sic] what looked like a big tour bus. It was big, with lights around it.

[State]: And how would you describe the lights?

[The victim's daughter]: They were orange. They were at the top and the bottom.

[State]: And where on the vehicle did you see these orange lights?

[The victim's daughter]: I seen [sic] the back part of it.

[State]: Pardon?

[The victim's daughter]: I seen [sic] the back part of it, like a side view.

[State]: So the side of the vehicle you saw?

[The victim's daughter]: Yes, sir.

[State]: And you said it looked like a tour bus?

[The victim's daughter]: Yes, sir.

[State]: How big was it?

[The victim's daughter]: Like width and diameter or something?

[State]: How long was it?

[The victim's daughter]: I only seen [sic] the back part.

[State]: What was it doing when you saw it?

[The victim's daughter]: It was driving past our mailbox.

...

[State]: Did you see anything else outside?

[The victim's daughter]: No, sir.

All she saw was a side view of the back part of the vehicle as it drove down the street. When asked if the vehicle the victim's daughter described matched defendant's wife's R.V., the investigating detective testified during *voir dire* that "she said a large vehicle with lights down the side, and the R.V. does have that." While the majority claims that the victim's daughter's testimony establishes "eyewitness testimony" that proves defendant's whereabouts on the night of the murder, there is no "eyewitness" who actually saw defendant or even a vehicle that was positively identified as belonging to defendant. *Contrast Patel*, ____ N.C. App. at ____, 719 S.E.2d at 107 (where the victim's vehicle was parked at the defendant's apartment complex). The fact that the victim's daughter briefly glimpsed the back of an unknown vehicle is insufficient to establish that defendant had the opportunity to murder the victim.

The majority determines that, according to phone records, defendant's presence in Wilkesboro on the night of the murder from 7:23 p.m. to 7:46 p.m. gave him the opportunity to commit the murder. Defendant's cell phone records indicate he left Wilkes County prior to 8:00 p.m. and the only evidence of the time of the victim's death was an estimate that the victim died between 8:00 p.m. and 9:00 p.m.

However, there was no evidence presented that defendant and the victim had any plans to meet on the night of the murder. When detectives found the victim's phone, there were two voicemail messages from defendant, however neither message indicated defendant was going to the victim's home on 18 October 2007. While defendant told the victim's wife he would come to the victim's home to resolve the payment issue, the victim's wife told defendant that the victim was not at home, but on a job. In fact, the victim's wife testified that the victim said he was not coming home that night and that she only knew he had come home when he arrived at her gym with their daughters at approximately 7:00 p.m. The State produced no evidence

indicating that defendant knew the victim would be home on 18 October 2007.

Moreover, the amount of time that defendant had access to the victim is less than the amount recognized by the majority. The majority suggests that defendant had approximately twenty-three minutes to meet and murder the victim. However, additional evidence indicated the victim was not at his home at 7:23 p.m. On the night of his death, the victim drove his two daughters to two different places to pick up fast food. A receipt indicated that the victim left a Wendy's restaurant at 7:24 p.m. The victim's daughter testified that the restaurant was approximately ten minutes from their home. She also testified that after arriving home, the victim went inside the house, placed his food on the counter and was inside for a minute. Subsequently, the victim left the house. At the earliest, the victim could not have been outside his home until around 7:35 p.m. The State's evidence showed that defendant made a series of calls, eight in total, from 7:35 p.m. to 7:46 p.m. Therefore, that amount of time indicates that defendant's phone was in use almost the entire time defendant was near the victim's house and the victim was outside.

Furthermore, the victim's blood alcohol content ("BAC") was .11 at the time of death. Both the victim's daughter and his wife testified that the victim had not been drinking prior to returning home. The victim's daughter also testified that she did not see him consume any alcohol and the victim's wife stated that he had not been drinking alcohol. Investigators found a 12 pack of beer in the victim's car. The victim's BAC of .11 indicated that to register that level he had to consume several beers or a fairly large mixed drink prior to his death.

The scenario proposed by the State, and accepted by the majority, suggests that the victim left his home after 7:30 p.m. and consumed enough alcohol to raise his BAC to .11. Defendant was then waiting on the victim's street at precisely the time the victim stepped outside. Then the victim walked to defendant's vehicle, defendant shot the victim one inch from the back of his head, then drove off in his R.V. and all of this happened while defendant was using his cell phone. This scenario, along with several other pieces of evidence including defendant's phone records, merely raise a suspicion of defendant's guilt and make it improbable that defendant murdered the victim. *See Lee*, 294 N.C. at 302, 240 S.E.2d at 451.

Ultimately, there is not "a reasonable inference of defendant's guilt [which] may be drawn from the circumstances." *Fritsch*, 351

N.C. at 379, 526 S:E.2d at 455 (citation omitted). The State failed to prove that defendant had sufficient opportunity to commit the crime to identify him as the perpetrator and therefore the trial court should have granted defendant's motion to dismiss.