IN THE COURT OF APPEALS OF NORTH CAROLINA

 2021-NCCOA-403

 No. COA20-309

 Filed 3 August 2021

Rowan County, No. 16 CRS 2384, 53102-03

STATE OF NORTH CAROLINA

 v.

SINDY LINA ABBITT

Rowan County, No. 16 CRS 54029, 54042-43

STATE OF NORTH CAROLINA

 v.

DANIEL ALBARRAN

 Appeal by defendants from judgments entered 13 March 2019 by Judge Lori I.

Hamilton in Rowan County Superior Court. Heard in the Court of Appeals 25 May

2021.

 Attorney General Joshua H. Stein, by Special Deputy Attorney General Sandra
 Wallace-Smith, for the State.

 Anne Bleyman for defendant-appellant Sindy Lina Abbitt

 Rudolf Widenhouse, by M. Gordon Widenhouse, Jr., for defendant-appellant
 Daniel Albarran.

 TYSON, Judge.
 STATE V. ABBITT

 2021-NCCOA-403

 Opinion of the Court

¶1 Sindy Abbitt (“Abbitt”) and Daniel Albarran (“Albarran”) (together:

 “Defendants”) were indicted for the murder of Lacynda Feimster and other crimes

 related thereto. The jury returned guilty verdicts against Abbitt for first-degree

 murder on the bases of malice, premeditation, deliberation, and felony murder,

 attempted robbery with a dangerous weapon, and assault with a deadly weapon.

 Albarran was convicted by the jury of first-degree felony murder, attempted robbery

 with a dangerous weapon, and assault with a deadly weapon. We find no error.

 I. Background

¶2 Mary Gregory (“Gregory”) lived on Crown Point Drive in May 2016 with her

 daughter, Lacynda Feimster, (“Feimster”) and Feimster’s two children: three-year-

 old Meaco; and, nineteen-year-old NaKyia. Gregory was at home and caring for

 Meaco when Feimster arrived home from work on 24 May 2016. Feimster had worked

 at an O’Charley’s restaurant, and she had bought juice and diaper wipes at a Food

 Lion supermarket before returning home between 10:00 p.m. and 11:00 p.m.

¶3 Gregory and Meaco were located in the living room and heard Feimster’s car

 arrive in the parking lot. Feimster took longer than usual to come inside the

 apartment. When Feimster walked into the apartment, a Black female and Hispanic

 male walked into the apartment behind her.

¶4 The male was described as tall, with slicked-back, black hair. He wore a long-

 sleeved white shirt, jacket, white low top sneakers, and dirty latex gloves. Gregory
 STATE V. ABBITT

 2021-NCCOA-403

 Opinion of the Court

 described the female as stocky and dark-skinned with shoulder-length hair. She was

 wearing red tennis shoes and a shirt with a design on the front. Regarding the

 female’s stature, Gregory described her as, “medium, short. She was just average.

 Not quite average height.” Gregory testified she had never seen either the woman or

 the man with Feimster previously.

¶5 After Feimster and the perpetrators entered the apartment, the male locked

 the front door behind them. Gregory asked Feimster if everything was okay, Feimster

 replied: “Yes, mama, I got this.” Feimster and the female walked directly into

 Feimster’s bedroom and closed the door. Gregory and Meaco remained on the living

 room sofa with the Hispanic male present.

¶6 Meaco eventually went into the bedroom and sat on his mother’s lap. Gregory

 asked the man for his name and where he lived, but he declined to answer. Gregory

 attempted to call her granddaughter to come and take Meaco away from the

 apartment, but the man took her cellular flip phone. He told Gregory she could call

 “when everything was over.”

¶7 Gregory testified the man was within arms-length away from her, the

 apartment was “well-lit” and nothing obstructed her view of the man. Gregory

 testified that while she waited on the sofa, the man paced back and forth. For the

 duration of the intrusion, the male opened the front door several times to peer

 outside, and he and the female perpetrator talked about “a phone call.”
 STATE V. ABBITT

 2021-NCCOA-403

 Opinion of the Court

¶8 The man made two or three cell phone calls. During one of the calls, Gregory

 testified he said, “She wants to know how far you are. Where are you? How far away

 are you?” After that phone call, the man went to Feimster’s bedroom and talked to

 the female perpetrator. Gregory was ordered to join them in the bedroom.

¶9 Gregory testified the female left the bedroom momentarily. Gregory saw she

 had a gun when she returned to the “well-lit” bedroom. The female hit Gregory in

 her face with the gun, and she fell to the floor. Gregory testified, “She told me to stay

 down. She said she didn’t want to hurt me because I didn’t have nothing (sic) to do

 with it and it didn’t have anything to do with me.” Gregory described the gun as

 small, black, with a brown handle.

¶ 10 Gregory testified when she arose from the floor, Feimster, Meaco and the

 female were located by the bedroom door. At some point during the incident,

 Feimster told the female perpetrator, “If I had it I would give it to you. I don’t have

 any money.” Gregory testified, “The next thing I know [Feimster] and Meaco are

 down on the floor . . . [Feimster] has got Meaco. They’re in a fetal position and you

 can’t see Meaco.” Gregory explained the female perpetrator had her knee and hand

 on Feimster, holding her down on the floor.

¶ 11 The female said to Feimster, “Bitch, you should have gave (sic) me the mother

 f***ing money.” The female perpetrator then shot Feimster in the head and ran out

 of the apartment. Gregory called 911 in hysterics; she was yelling for help and
 STATE V. ABBITT

 2021-NCCOA-403

 Opinion of the Court

 portions of the call are inaudible. The 911 operator asked, “Did he have a weapon?”

 Gregory said, “Yes. (inaudible) had a gun and she shot my daughter.” The 911

 operator recording of a computer-aided dispatch asserted, “Male had a gun and shot

 the female.” The police and EMS arrived. Gregory was transported to the hospital

 and treated with eight stiches for her broken nose. Meaco was not physically injured.

¶ 12 At trial, forensic pathologist, Nabila Haikal M.D., testified that she performed

 an autopsy on Feimster on 25 May 2016. Dr. Haikal testified Feimster’s life was

 taken by a gunshot wound to the head, it took minutes for Feimster to die, and she

 had suffered other injuries suggesting blunt force trauma on the scalp.

¶ 13 Salisbury Police investigators developed a suspect named Ashley Phillips

 (“Phillips”). Phillips was the first person identified by Feimster’s family. A

 confidential informant identified a car connected to Phillips as being present at the

 murder scene on 24 May. Phillips came to the police station after the crimes driving

 this car.

¶ 14 Police officers found a .25 caliber Lorcin pistol and white latex gloves inside

 the glove compartment of her car. DNA swabs were taken from these items, but they

 were not submitted for testing. There were also three spent shell casings matching

 the .25 caliber of the pistol inside the car.

¶ 15 Gregory was shown a photograph of Phillips and said, “she does look like her,”

 referring to the female who had shot Feimster, but the police did not do a
 STATE V. ABBITT

 2021-NCCOA-403

 Opinion of the Court

 photographic lineup including Phillips’ picture.

¶ 16 Inside Feimster’s bedroom, a .25 caliber shell casing was found on the floor

 under Feimster’s body. Police also discovered a black drawstring bag in the bedroom

 with a Taurus revolver inside.

¶ 17 Defense counsel explained to the court that Bureau of Alcohol, Tobacco,

 Firearms, and Explosives Agent Kevin Kelly (“Agent Kelly”) took the .25 shell casing

 found at the scene and sent it to Jamie Minn (“Minn”) along with two shell casings

 he had test fired himself from the pistol recovered in Phillips’ car. Minn received all

 three shell casings.

¶ 18 Minn was not tendered as a firearms expert at the time of testing, but she

 examined the shell casings and reported “she could not say it was not the gun used,

 she also told them there was a likelihood it could be the gun that was used and

 explained to them how to get further testing that they did not do.” The Lorcin pistol

 and shell casings found in Phillips’ car and under Feimster’s body produced

 inconclusive results. The Lorcin pistol was eventually returned to Phillips.

¶ 19 Three days after Feimster was killed, police conducted two photographic

 lineups with Gregory on 27 May 2016. One lineup involved a photo array of six

 pictures of males, including a photo of Albarran. Gregory became emotional and

 visibly upset upon being shown Albarran’s photo. She was certain he was the

 Hispanic male inside of her home and involved in the crimes. The photo lineup was
 STATE V. ABBITT

 2021-NCCOA-403

 Opinion of the Court

 recorded and played for the jury. The second photographic lineup involved a photo

 array of six Black females, including Abbitt. Gregory selected Abbitt’s picture with

 certainty as the Black woman who had shot and killed her daughter.

¶ 20 Police officers interviewed Abbitt. She admitted she knew Feimster through

 her sister but asserted she had not seen her in several years. Abbitt denied being at

 Crown Point Drive or inside the victim’s home on 24 May.

¶ 21 Abbitt claimed, as an alibi, she was home all night at 340 Adolphus Road at a

 cookout the night Feimster was killed, and other individuals were with her. Abbitt’s

 counsel filed pretrial notice of an alibi defense. None of those asserted individuals

 were called or testified during trial.

¶ 22 Federal Bureau of Investigation Special Agent Michael Sutton (“Agent

 Sutton”) of the cellular analysis survey division, testified about each of Defendants’

 cellular phone usage from 23-26 May 2016. Agent Sutton analyzed cell numbers:

 (704) 645-1373, and (704) 223-7882. The parties stipulated that on or about 24 May

 2016, Sindy Abbitt’s telephone number was (704) 223-7882.

¶ 23 Salisbury Police Sergeant Travis Schulenburger (“Sergeant Schulenburger”)

 testified Albarran’s cellular number at that time was (704) 645-1373. Sergeant

 Schulenburger testified he had observed a “323” tattoo on Albarran’s body. Albarran

 told him during an interview he had grown up in Los Angeles. The area around Los

 Angeles is assigned a “323” area code. Albarran stated some people call him “L.A.”
 STATE V. ABBITT

 2021-NCCOA-403

 Opinion of the Court

¶ 24 The calls Defendants made on 24 May 2016 were relayed by the cell phone

 towers located at or near the O’Charley’s restaurant, the Food Lion supermarket, and

 Adolphus Road, all of which are located in south Salisbury and in the vicinity of

 Feimster’s apartment.

¶ 25 Agent Sutton testified that on 24 May 2016, from at least 6:09 p.m. to 7:12

 p.m., both of Defendants’ phones used sectors of towers that provided service to an

 area that included the 340 Adolphus Road address. No later than 7:32 p.m.,

 Albarran’s phone had moved from the south Salisbury location to an area near the

 O’Charley’s restaurant where Feimster had worked. By 10:41 p.m., Abbitt’s phone

 had moved from the area south of Salisbury and used the sector of the cell tower

 which provided service to an area that included the Food Lion supermarket where

 Feimster had purchased juice and baby wipes.

¶ 26 Albarran’s phone used sectors of towers that provided service to the area that

 included the Food Lion supermarket and Gregory’s apartment at 11:02 p.m., 11:04

 p.m. and 11:07 p.m. The sectors used at 11:02 p.m., and 11:07 p.m., had also provided

 service to the O’Charley’s restaurant. On 24 May 2016, by no later than 11:58 p.m.,

 both phones had moved south back to a tower which served an area that included

 Adolphus Road. There were approximately twelve contacts between the Defendants’

 two phones from 23 May 2016 through 26 May 2016.

¶ 27 Albarran and Abbitt both denied knowing each another. Abbitt was arrested
 STATE V. ABBITT

 2021-NCCOA-403

 Opinion of the Court

 on 23 June 2016. Albarran was arrested on 17 August 2016. Gregory identified both

 Albarran as the male perpetrator and Abbitt as the female perpetrator in open court.

 The defense requested forensic analysis of a pink cell phone recovered from the coffee

 table in the victim’s apartment. Defense did not request analysis from the Salisbury

 Police Department for any other items.

¶ 28 Defendants were joined for noncapital trials on 4 March 2019. The jury’s

 verdicts convicted Abbitt of first-degree murder on the bases of both premeditation

 and deliberation and felony murder, attempted robbery with a dangerous weapon,

 and assault with a deadly weapon. The jury’s verdicts convicted Albarran of first-

 degree murder on the bases of felony murder, attempted robbery with a dangerous

 weapon, and assault with a deadly weapon.

¶ 29 Abbitt was sentenced to life without possibility of parole for murder and to

 concurrent sentences of 73 to 100 months and 150 days for the additional crimes.

 Albarran was sentenced to life without possibility of parole for the first-degree

 murder, and to concurrent sentences of 84 months to 113 months and 150 days for

 the additional crimes. Defendants timely appealed.

 II. Jurisdiction

¶ 30 These appeals arise from final judgments in a criminal case pursuant to N.C.

 Gen. Stat. § 7A-27(b) (2019).

 III. Issues
 STATE V. ABBITT

 2021-NCCOA-403

 Opinion of the Court

¶ 31 Six issues are asserted before this Court on appeal. Both parties appeal the

 trial court’s refusal to allow them to introduce evidence to implicate third parties.

 Albarran also asserts the photographic lineup was suggestive, the trial court erred

 overruling his objections to the State’s assertion he had failed to present evidence,

 and his counsel’s closing argument was flawed.

¶ 32 Abbitt individually challenges the admission of her out-of-court denials of

 seeing the victim the day of the murder and the sufficiency of the indictment to

 support the State proceeding on each element of first-degree murder.

 IV. Refusal to Allow Evidence Implicating Others

¶ 33 Defendants argue the trial court erred by failing to admit relevant evidence

 tending to show two other people had committed the crimes for which they were

 charged.

¶ 34 “‘Relevant evidence’ means evidence having any tendency to make the

 existence of any fact that is of consequence to the determination of the action more

 probable or less probable than it would be without the evidence.” N.C. Gen. Stat. §

 8C-1, Rule 401 (2019).

 A. Standard of Review

¶ 35 “Although the trial court’s rulings on relevancy technically are not

 discretionary and therefore are not reviewed under the abuse of discretion standard

 applicable to Rule 403, such rulings are given great deference on appeal.” Dunn v.
 STATE V. ABBITT

 2021-NCCOA-403

 Opinion of the Court

 Custer, 162 N.C. App. 259, 266, 591 S.E.2d 11, 17 (2004) (citation and quotation

 marks omitted).

 Evidence casting doubt on the guilt of the accused
 and insinuating the guilt of another must be relevant in
 order to be considered by the jury. Because the relevancy
 standard in criminal cases is relatively lax, [a]ny evidence
 calculated to throw light upon the crime charged should be
 admitted by the trial court. However, the general rule
 remains that the trial court has great discretion on the
 admission of evidence. Evidence that another committed
 the crime for which the defendant is charged generally is
 relevant and admissible as long as it does more than create
 an inference or conjecture in this regard. Rather, it must
 point directly to the guilt of the other party. The evidence
 must simultaneously implicate another and exculpate the
 defendant.

 State v. Miles, 222 N.C. App. 593, 607, 730 S.E.2d 816, 827 (2012) (emphasis supplied)

 (citations and internal quotation marks omitted) aff’d, 366 N.C. 503, 750 S.E.2d 833

 (2013).

 B. Trial Court’s Findings

¶ 36 The trial court found:

 [S]ome items, specifically, a .25 caliber handgun and latex
 gloves were found somewhere relevant to Ashley Phillips.

 That also Ashley Phillips and others were seen arriving at
 the police department in a vehicle that has been forecasted
 to the Court to be similar to an automobile that was
 identified by a confidential informant as being in or around
 the scene of the murder of Ms. Feimster on March 24, 2016
 (sic.)

 Also evidence has been presented at trial to indicate that
 STATE V. ABBITT

 2021-NCCOA-403

 Opinion of the Court

 the two -- the black female and the Hispanic male that were
 in the apartment on the night of May 24, 2016, were in
 communication via telephone. One or both of those
 individuals were in communication via cell phone with
 other individuals asking questions such as, “Where are
 you? When are you going to be here,” which would -- could
 create and could be seen as evidence of the involvement of
 other parties, which to this Court does not -- which to this
 Court means that there may have been other people
 involved --could very well have been other people involved
 at – and one of those people could very, very well have been
 Ashley Phillips.

 ....

 [T]he evidence that the defense intends to proffer need to
 both point directly to the guilt of another person and be
 inconsistent with the defendant’s guilt.

 I’m going to find that the proffered -- or the forecasted
 evidence and the arguments of counsel for the defense
 failed to meet that second prong. That is, that the evidence
 would be inconsistent with the guilt of the defendants, and,
 therefore, I’m going to grant the State’s motion in limine to
 exclude questions or testimony regarding the guilt of
 another individual.

¶ 37 Neither Defendant proffered evidence tending to both implicate another

 person(s) and exculpate either Defendant. Miles, 222 N.C. App. at 607, 730 S.E.2d

 at 827 (emphasis supplied). The proffered evidence merely inferred another person

 may have been involved in, or assisted in committing the crimes.

¶ 38 Such inferences, if true, were not inconsistent with direct and eyewitness

 evidence of either Albarran or Abbitt’s guilt. Id. Albarran failed to show the trial
 STATE V. ABBITT

 2021-NCCOA-403

 Opinion of the Court

 court’s exclusion of the proffered evidence, as not relevant and not admissible, was

 prejudicial or reversible error. This argument is overruled.

 V. Photographic Lineup

¶ 39 Albarran alleges the photographic array lineup was unconstitutionally

 suggestive.

 A. Standard of Review

¶ 40 The standard of review to challenge the denial of a motion to suppress a

 suggestive pretrial identification is whether the trial court’s findings of fact are

 supported by competent evidence, and if the findings of fact support the conclusions

 of law, which are reviewed de novo. State v. Malone, 373 N.C. 134, 145, 833 S.E.2d

 799, 786 (2019). This Court examines the totality of the circumstances to determine

 whether an identification procedure was unduly suggestive. State v. Alvarez, 168

 N.C. App. 487, 495, 608 S.E.2d 371, 376 (2005).

¶ 41 “[A] trial court’s evidentiary ruling on a pretrial motion [to suppress] is not

 sufficient to preserve the issue of admissibility for appeal unless a defendant renews

 the objection during trial.” State v. Oglesby, 361 N.C. 550, 554, 648 S.E.2d 819, 821

 (2007) (emphasis original) (citations omitted). Where this issue is not properly

 preserved at trial, we review for plain error. State v. Williams, 248 N.C. App. 112,

 118, 786 S.E.2d 419, 424 (2016).

¶ 42 Under plain error review, a defendant must show a fundamental error occurred
 STATE V. ABBITT

 2021-NCCOA-403

 Opinion of the Court

 at trial and that, after reviewing the entire record, the claimed error must be so

 prejudicial justice cannot have been done. State v. Young, 248 N.C. App. 815, 823, 790

 S.E.2d 182, 188 (2016) (citation omitted). Albarran must show “the error had a

 probable impact on the jury’s finding” and verdict that the defendant was guilty. Id.

 (citations, quotation marks, and brackets omitted).

 B. Analysis

¶ 43 Albarran filed a pretrial motion to suppress the photographic lineup, which the

 trial court denied. During trial, Albarran objected to testimony about the pretrial

 identification process, but he failed to object to Gregory’s testimony when she

 identified him as the Hispanic male perpetrator in the courtroom. The issue was not

 properly preserved for appellant review and is subject to plain error review. State v.

 Houser, 239 N.C. App. 410, 419, 768 S.E.2d 626, 633, cert. denied, 368 N.C. 281, 775

 S.E.2d 869 (2015).

¶ 44 Albarran argues the photograph of him was substantially different from the

 other six photographs in the lineup. He asserts the photo was closer to his face than

 the others and drew attention to him.

¶ 45 “[T]he jury shall be instructed that it may consider credible evidence of

 compliance or noncompliance to determine the reliability of eyewitness

 identification.” N.C. Gen. Stat. § 15A-284.52(d)(3) (2019). This instruction was

 provided to the jury by the trial court pursuant to N.C.P.I. - - Crim. 101.15 (2019).
 STATE V. ABBITT

 2021-NCCOA-403

 Opinion of the Court

¶ 46 Gregory’s courtroom identification of Albarran was of independent origin,

 based upon what she had experienced and saw up to and at the time of the shooting

 and during trial. Albarran failed to object, and his statutory and due process rights

 were not violated. State v. Malone, 373 N.C. 134, 135, 833 S.E.2d 779, 781 (2019)

 (holding eyewitness testimony identifying the defendant in trial after a prejudicial

 photo lineup was ultimately not a constitutional violation of his rights because the

 identification “was of independent origin”).

¶ 47 Any uncertainty regarding the accuracy, abilities, or credibility of a witness’

 in-court identification testimony was subject to cross-examination. Any challenge

 goes to the weight and credibility the trier of fact should consider, rather than to its

 admissibility. State v. Billups, 301 N.C. 607, 616, 272 S.E.2d 842, 849 (1981).

¶ 48 Under plain error review, Albarran has failed to show that the alleged error

 had a probable impact on the jury. He has failed to establish the error is one that

 seriously affects the fairness, integrity, or public reputation of judicial proceedings or

 that a different outcome would have occurred, if excluded. With the unobjected to

 and in-court identification, the photo identification testimony is not shown to have

 impacted the jury’s verdict. Albarran has failed to establish any prejudice. His

 argument is overruled.

 VI. Failure to Present an Evidence Objection

¶ 49 Where the trial court fails to sustain a defendant’s objection to the prosecutor’s
 STATE V. ABBITT

 2021-NCCOA-403

 Opinion of the Court

 improper closing argument, this Court reviews that ruling for abuse of discretion.

 State v. Martin, 248 N.C. App. 84, 88-89, 786 S.E.2d 426, 429 (2016) (citing State v.

 Jones, 355 N.C. 117, 131, 558 S.E.2d 97, 106 (2002).

 A. Standard of Review

¶ 50 “Abuse of discretion results where the court’s ruling is manifestly unsupported

 by reason or is so arbitrary that it could not have been the result of a reasoned

 decision.” Martin, 248 N.C. App. at 89, 786 S.E.2d at 429 (internal citations omitted).

 “When applying the abuse of discretion standard to closing arguments, this Court

 first determines if the remarks were improper. . . . [I]mproper remarks include

 statements of personal opinion, personal conclusions, name-calling, and references to

 events and circumstances outside the evidence, such as the infamous acts of others.”

 Jones, 355 N.C. at 131, 558 S.E.2d at 106. This Court also “determine[s] if the

 remarks were of such a magnitude that their inclusion prejudiced defendant, and

 thus should have been excluded by the trial court.” Id.

 B. Analysis

¶ 51 Albarran argues the trial court erred by overruling his objection during the

 State’s closing argument to the prosecutor’s improperly commenting on his failure to

 present evidence. The State’s closing argument asserted:

 [Prosecutor]: All right . . . . “Where is it?”

 [Defense Counsel]: Objection.
 STATE V. ABBITT

 2021-NCCOA-403

 Opinion of the Court

 THE COURT: Overruled.

 [Prosecutor]: The defense has suggested that value can be
 found in the evidence . . . in the Salisbury PD evidence
 locker that has not undergone forensic analysis. They can
 have the evidence analyzed. Why didn’t they have the
 evidence analyzed? Where is their forensic analysis --
 analyst? Again, where is it? Defendant Abbitt gave
 Sergeant Shulenburger a list of people who would
 corroborate that she was home all night on May 24 -- 25,
 2016. Her attorney predicted in her opening statement that
 you would hear alibi evidence. Where are these alibi
 witnesses? And why haven’t you heard from them?

¶ 52 Defense counsel objected, stating “we’re getting dangerously close to

 potentially presenting antagonistic defenses.” The trial court overruled the defenses’

 objections, but then stated, “Mr. Albarran did not represent to the jury that he had

 an alibi defense.”

¶ 53 “The State is free to point out the failure of the defendants to produce available

 witnesses.” State v. Tilley, 292 N.C. 132, 144, 232 S.E.2d 433, 441 (1977) (prosecutor’s

 remarks directed at the failure of defendants to produce exculpatory evidence or to

 contradict the State’s case did not constitute an impermissible comment on the failure

 of defendants to take the stand). Abbitt’s counsel filed a pretrial notice to assert an

 alibi defense.

¶ 54 Under these facts relating to Abbitt, the prosecutor’s remarks pointing out her

 failure to produce exculpatory evidence are not impermissible. State v. Mason, 315

 N.C. 724, 732-33, 340 S.E.2d 430, 435-36 (1986). Here, the prosecutor’s statements
 STATE V. ABBITT

 2021-NCCOA-403

 Opinion of the Court

 do not rise to the level of an improper remark according to Jones, 355 N.C. at 131,

 558 S.E.2d at 106. Defendant’s argument is without merit and overruled. Id.

 VII. Defendant’s Closing Argument

¶ 55 When the trial court fails to sustain a defendant’s objection to the prosecutor’s

 improper closing argument, this Court reviews that ruling for an abuse of discretion.

 Martin, 248 N.C. App. at 88-89, 786 S.E.2d at 429. “Abuse of discretion results where

 the court’s ruling is manifestly unsupported by reason or is so arbitrary that it could

 not have been the result of a reasoned decision.” Id. at 89, 786 S.E.2d at 429 (internal

 citation omitted).

¶ 56 As noted in the standard of review for section VI, “A lawyer may, however, urge

 the jury to observe and consider a defendant’s demeanor during trial.” State v.

 Salmon, 140 N.C. App. 567, 575, 537 S.E.2d 829, 835 (2000) (referencing the

 defendant in his closing, the prosecutor stated, “[h]ave you seen the slightest bit of

 emotion? . . . . I haven’t seen any. He is a cold fish. He’s the kind of individual, when

 you think about it, you see, who would do exactly what the evidence shows he did.”).

¶ 57 Here, the defense’s closing argument was as follows:

 [Defense counsel]: [Gregory] was asked about whether or
 not she noticed any tattoos on the person -- on the
 individual that she saw in the apartment -- the Hispanic
 male -- that night. And she said she didn’t notice any
 tattoos. You’ve had a – a chance to see Daniel Albarran in
 the courtroom this week - -
 STATE V. ABBITT

 2021-NCCOA-403

 Opinion of the Court

 [Prosecutor]: Objection, Your Honor.

 THE COURT: Sustained.

 [Defense counsel]: You have been in this courtroom the
 entire week. You’ve had a chance to observe the demeanor
 of Daniel Albarran, his appearance because you - -

 [Prosecutor]: Objection, Your Honor.

 THE COURT: Sustained.

 [Defense counsel]: -- you obviously have had the
 opportunity sitting in this courtroom to see Daniel
 Albarran and to compare his appearance with the
 description that you’ve [heard] sic.

 [Prosecutor]: Objection, Your Honor.

 THE COURT: Sustained.

 [Defense counsel]: All right. You heard Detective
 Shulenburger - - Sergeant Shulenburger testify that the
 date Daniel Albarran was arrested, he came out of the
 bedroom putting his shirt on and that had numerous
 tattoos. He even had tattoos on his neck, and yet Ms.
 Gregory didn’t mention tattoos in her description.

¶ 58 Defense counsel’s closing argument asked the jury to discern what Albarran’s

 appearance may have been two years earlier, and to contrast it with what his

 appearance was at trial, and in his lineup photo.

¶ 59 The prosecutor stated:

 [Prosecutor]: And I’ll just state for the record, I don’t have
 any problem with his demeanor or whatever. And I didn’t
 have any problem with her asking about tattoos the
 STATE V. ABBITT

 2021-NCCOA-403

 Opinion of the Court

 defendant had at the time. The problem is the tattoos that
 he may have now, two and half years later.

 There’s no evidence of what tattoos he had then and what
 tattoos he has now. It’s certainly appropriate for her to
 comment on tattoos that were observed by Sergeant
 Shulenburger at the time, and that’s the reason I objected,
 Your Honor.

¶ 60 Gregory testified Albarran wore a long-sleeve white shirt and jacket on the

 night of Feimster’s murder, and if he had tattoos on his arms, she would not have

 been able to see them. The evidence tends to show the photographic lineup of both

 Albarran and Abbitt was held on 27 May 2016, three days after Feimster was

 murdered.

¶ 61 Defendants’ trial began 4 March 2019, more than two years after the murder.

 Albarran’s photograph used in the array and in the record does not show visible

 tattoos on Albarran’s face and neck.

¶ 62 A change in Albarran’s appearance over two years, or even three months, has

 no bearing on Gregory’s identification and description of Albarran on the night of the

 murder. Based upon the lack of any visible tattoos in Albarran’s photograph, shown

 to Gregory three days after the murder, the trial court did not abuse its discretion

 sustaining the prosecution’s objections. Albarran’s argument is overruled.

 VIII. Abbitt’s Out of Court Denials

¶ 63 Abbitt argues her out-of-court statements denying she had seen Feimster
 STATE V. ABBITT

 2021-NCCOA-403

 Opinion of the Court

 recently were improperly placed into evidence as admissions. “‘Hearsay’ is a

 statement, other than one made by the declarant while testifying at the trial or

 hearing, offered in evidence to prove the truth of the matter asserted.” N.C. Gen.

 Stat. § 8C-1, Rule 801(c) (2019). “However, out-of-court statements offered for

 purposes other than to prove the truth of the matter asserted are not considered

 hearsay.” State v. Call, 349 N.C. 382, 409, 508 S.E.2d. 496, 513 (1998). “This Court

 has held that statements of one person to another to explain subsequent actions taken

 by the person to whom the statement was made are admissible as non-hearsay

 evidence.” Id.

¶ 64 Sergeant Travis testified about a conversation he had with Abbitt, wherein she

 stated that she had not been to the Crown Point Drive area in over a year, had not

 seen Feimster in years, she had only known Feimster through Abbitt’s sister, she did

 not know a Hispanic male who goes by the street name of “L.A.,” and denied knowing

 Daniel Albarran at all.

¶ 65 Sergeant Travis testified Abbitt was not in custody or under arrest at the time

 of this conversation. He had advised Abbitt she did not have to talk to him and was

 free to leave at any time. After being advised that she could leave at any time, Abbitt

 willingly spoke to him.

¶ 66 The statements would be relevant and admissible pursuant to N.C. Gen. Stat.

 § 8C-1, Rule 401 (2019). These statements did not give rise to a reasonable possibility
 STATE V. ABBITT

 2021-NCCOA-403

 Opinion of the Court

 that without the asserted error, the jury would have reached a different result.

 Defendant’s arguments are without merit and overruled.

 IX. Elements of First-Degree Murder against Abbitt

¶ 67 Abbitt argues her indictment is fatally defective because it does not sufficiently

 allege the essential elements of the offense. We disagree.

¶ 68 Our Supreme Court stated:

 [T]his Court has consistently held that indictments for
 murder based on the short-form indictment statute are in
 compliance with both the North Carolina and United
 States Constitutions.

 This Court has also held that the short-form indictment is
 sufficient to charge first-degree murder on the basis of any
 of the theories, including premeditation and deliberation,
 set forth in N.C.G.S. § 14-17, which is referenced on the
 short-form indictment.

 The crime of first-degree murder and the accompanying
 maximum penalty of death, as set forth in N.C.G.S. § 14-
 17 and North Carolina’s capital sentencing statute, are
 encompassed within the language of the short-form
 indictment. We, therefore, conclude that premeditation
 and deliberation need not be separately alleged in the
 short-form indictment.

 State v. Braxton, 352 N.C. 158, 174-175, 531 S.E.2d 428, 437-38 (2000) (alterations,

 citations and internal quotation marks omitted). The short form indictment is

 sufficient to confer jurisdiction upon the courts. Id. Abbitt’s argument is overruled.

 X. Conclusion

¶ 69 Defendants were properly prohibited from presenting evidence implicating a
 STATE V. ABBITT

 2021-NCCOA-403

 Opinion of the Court

 third party upon mere speculation, and which evidence did not exculpate their guilt.

 Albarran did not properly preserve his pretrial objection to the photo lineup on appeal

 by Gregory’s unobjected to in-court identification of him. Defendants’ objections

 during the prosecutor’s closing arguments were neither meritorious nor prejudicial.

 The trial court did not err in sustaining the prosecutor’s objections to Albarran’s

 closing argument on his visible tattoos the time of trial.

¶ 70 Abbitt’s out-of-court statements were not hearsay. They were relevant and

 properly admitted. Abbitt’s challenge to her indictment is without merit. Both

 Defendants received fair trials, free from prejudicial errors they together or

 individually preserved and argued. We find no error. It is so ordered.

 NO ERROR.

 Judge JACKSON concurs.

 Judge MURPHY dissents with separate opinion.
 No. COA20-309 – State v. Abbitt

 MURPHY, Judge, dissenting in part and concurring in part.

¶ 71 Evidence implicating others is relevant and admissible when it simultaneously

 implicates another and exculpates a defendant. Defendants sought to provide such

 evidence that implicated another person and exculpated themselves. The proffered

 evidence “constitute[d] a possible alternative explanation for the victim’s unfortunate

 demise and thereby cast[ed] crucial doubt upon the State’s theory of the case.” State

 v. McElrath, 322 N.C. 1, 13-14, 366 S.E.2d 442, 449 (1988). The trial court erred in

 precluding Defendants from introducing evidence implicating other suspects.

¶ 72 Further, a “reasonable possibility [exists] that, had the error in question not

 been committed, a different result would have been reached.” State v. Miles, 222 N.C.

 App. 593, 607, 730 S.E.2d 816, 827 (2012), aff’d per curiam, 366 N.C. 503, 750 S.E.2d

 833 (2013). Defendants are entitled to a new trial, which would render the issues

 discussed in Parts V through VIII of the Majority moot. As to the validity of the short

 form indictment discussed in Part IX, I concur.

 BACKGROUND

¶ 73 During the investigation, two suspects other than Defendants were

 identified—Ashley Phillips and Tim Tim McCain. Phillips is a black woman.1

 1 McCain’s race was not identified by the confidential informant in the police report

 regarding McCain’s involvement in the murder. The trial court referenced the report and
 stated that the informant “says . . . [h]e saw a black male identified as Tim Tim McCain at
 the apartment complex minutes before the murder.” However, the report only mentions “a
 black female” and does not mention McCain’s race.
 STATE V. ABBITT

 2021-NCCOA-403

 MURPHY, J., dissenting in part and concurring in part.

 Feimster’s family initially identified Phillips as a possible suspect, and a confidential

 informant “stated that he did know that [Feimster’s] family was trying to pin the

 murder on . . . this girl because [she and Feimster were] already beefing.” When

 shown a photograph of Phillips, which was not in a photographic lineup, Gregory

 stated, “she does look like [the woman who shot Feimster].” Law enforcement

 investigated Phillips as a suspect, and a confidential informant identified a car,

 consistent with Phillips’ car, at the apartment complex on the day of the murder.

 When the police searched Phillips’ car, they found a .25 caliber Lorcin pistol, and

 latex gloves inside her car. This combination of items was consistent with Gregory’s

 testimony that the man who participated in Feimster’s murder was wearing latex

 gloves, as well as with her testimony regarding the small size of the gun used to

 murder Feimster.

¶ 74 Additionally, according to a Salisbury Police Department Case Supplemental

 Report, a confidential informant told law enforcement they saw McCain “at the

 apartment complex minutes before the murder.” The confidential informant stated

 McCain “was wearing two big coats, was carrying a large looking pistol, and was

 trying to conceal his face with a white tshirt.” This information was consistent with

 Gregory’s testimony that the man who participated in Feimster’s murder was

 wearing a work jacket and a white t-shirt, and her prior statement to an officer at the
 STATE V. ABBITT

 2021-NCCOA-403

 MURPHY, J., dissenting in part and concurring in part.

 hospital that the Hispanic man had a gun.2 Furthermore, according to the report,

 McCain saw the informant looking at him but McCain kept walking. The informant

 implied McCain was with a black woman in a car, which was consistent with Phillips’

 car. The informant also stated McCain “didn’t kill the victim[,] but the [woman] did”;

 “[McCain] had to call the [woman] to do it because he had been seen.” This

 information was also consistent with Gregory’s testimony that a black woman shot

 Feimster, and was accompanied by a Hispanic man.

¶ 75 Based on this information, Defendants intended to present evidence that

 Phillips and McCain committed the crime. However, on 7 March 2019, the State filed

 a Motion in Limine to Preclude Mention of Possible Guilt of Another. Over

 Defendants’ objections, the trial court granted the State’s motion in limine to exclude

 questions or testimony regarding the guilt of another. In granting the State’s motion

 in limine to exclude questions or testimony regarding the guilt of other individuals,

 the trial court found:

 [S]ome items, specifically, a .25 caliber handgun and latex
 gloves were found somewhere relevant to Ashley Phillips.

 That also Ashley Phillips and others were seen arriving at
 the police department in a vehicle that has been forecasted
 to the Court to be similar to an automobile that was
 identified by a confidential informant as being in or around

 2 At trial, contrary to her statement to the officer at the hospital that the Hispanic

 man had a gun in the apartment the night of Feimster’s murder, Gregory testified that she
 could not remember whether the Hispanic man had a gun.
 STATE V. ABBITT

 2021-NCCOA-403

 MURPHY, J., dissenting in part and concurring in part.

 the scene of the murder of Ms. Feimster on [24 May 2016].

 Also evidence has been presented at trial to indicate that
 the two -- the black female and the Hispanic male that were
 in the apartment on the night of [24 May 2016], were in
 communication via telephone. One or both of those
 individuals were in communication via cell phone with
 other individuals asking questions such as, “Where are
 you? When are you going to be here,” which would -- could
 create and could be seen as evidence of the involvement of
 other parties, which to this Court does not -- which to this
 Court means that there may have been other people
 involved --could very well have been other people involved
 at -- and one of those people could very, very well have been
 Ashley Phillips.

¶ 76 Throughout the trial, over Defendants’ objections, the trial court precluded the

 presentation of evidence of other suspects implicated in the murder of Feimster.

 Without hearing such potentially exculpatory evidence, the jury found Abbitt guilty

 of first-degree murder on the basis of both premeditation and deliberation and felony

 murder, attempted robbery with a dangerous weapon, and assault with a deadly

 weapon, and the jury found Albarran guilty of first-degree murder on the basis of

 felony murder, attempted robbery with a dangerous weapon, and assault with a

 deadly weapon.

¶ 77 Defendants argue the trial court erred in prohibiting them from offering

 evidence of the guilt of Phillips and McCain, as evidence regarding whether they were

 even at Feimster’s apartment on the night of the murder was exculpatory.

 ANALYSIS
 STATE V. ABBITT

 2021-NCCOA-403

 MURPHY, J., dissenting in part and concurring in part.

¶ 78 Relevant evidence is “evidence having any tendency to make the existence of

 any fact that is of consequence to the determination of the action more probable or

 less probable than it would be without the evidence.” N.C.G.S. § 8C-1, Rule 401

 (2019). “The admissibility of evidence is governed by a threshold inquiry into its

 relevance. In order to be relevant, the evidence must have a logical tendency to prove

 any fact that is of consequence in the case being litigated.” State v. Holmes, 263 N.C.

 App. 289, 302, 822 S.E.2d 708, 720 (2018), disc. rev. denied, 372 N.C. 97, 824 S.E.2d

 415 (2019). “Trial court rulings on relevancy technically are not discretionary.” Id.

 “Whether evidence is relevant is a question of law, [and] we review the trial court’s

 admission of the evidence de novo.” State v. Kirby, 206 N.C. App. 446, 456, 697 S.E.2d

 496, 503 (2010). Even though we review relevancy rulings de novo, we give the trial

 court rulings regarding whether evidence is relevant “great deference on appeal.”

 State v. Allen, 265 N.C. App. 480, 489-90, 828 S.E.2d 562, 570, disc. rev. denied,

 appeal dismissed, 373 N.C. 175, 833 S.E.2d 806 (2019).

¶ 79 The Majority correctly sets out the rule regarding relevant evidence

 implicating others:

 Evidence casting doubt on the guilt of the accused and
 insinuating the guilt of another must be relevant in order
 to be considered by the jury. Because the relevancy
 standard in criminal cases is “relatively lax,” any evidence
 calculated to throw light upon the crime charged should be
 admitted by the trial court. However, the general rule
 remains that the trial court has great discretion on the
 STATE V. ABBITT

 2021-NCCOA-403

 MURPHY, J., dissenting in part and concurring in part.

 admission of evidence. Evidence that another committed
 the crime for which the defendant is charged generally is
 relevant and admissible as long as it does more than create
 an inference or conjecture in this regard. Rather, it must
 point directly to the guilt of the other party. The evidence
 must simultaneously implicate another and exculpate the
 defendant.

 Miles, 222 N.C. App. at 607, 730 S.E.2d at 827 (emphases added) (citations and marks

 omitted); supra at ¶ 35. In Miles, we differentiated prior cases, “where alternate

 perpetrators were positively identified and both direct and circumstantial evidence

 demonstrated the third parties’ opportunity and means to murder,” from the

 defendant’s speculative hypothetical that a third party only needed to “step outside

 her home to murder her husband.” Id. at 608, 730 S.E.2d at 827. Such a speculative

 hypothetical did not amount to sufficient evidence to insinuate the guilt of another.

 Id. at 608-09, 730 S.E.2d at 827-28.

¶ 80 While the Majority correctly identifies the rule regarding relevant evidence

 implicating others, I disagree with its analysis and conclusion that the evidence

 proffered by Defendants should not have been admitted. The Majority cites the trial

 court’s findings and concludes “[n]either Defendant proffered evidence tending to

 both implicate another person(s) and exculpate either Defendant.” Supra at ¶ 37.

 According to the Majority, the inferences from the evidence regarding Phillips and

 McCain were not inconsistent with evidence of either Albarran or Abbitt’s guilt.

 Supra at ¶¶ 37-38 (“The proffered evidence merely inferred another person may have
 STATE V. ABBITT

 2021-NCCOA-403

 MURPHY, J., dissenting in part and concurring in part.

 been involved in, or assisted in committing the crimes. Such inferences, if true, were

 not inconsistent with direct and eyewitness evidence of either Albarran or Abbitt’s

 guilt.”). I could not disagree more.

¶ 81 The evidence Defendants offered regarding the guilt of others was highly

 relevant regarding the possibility of mistaken identification of who was actually in

 the apartment on the night of Feimster’s murder. Specifically, Gregory’s statement

 that Phillips looked like the woman in the apartment and the similarity between the

 informant’s description of McCain and Gregory’s description of the man in the

 apartment, in conjunction with the evidence placing McCain and Phillips at the scene

 of the crime and evidence implicating McCain and Phillips that was consistent with

 Gregory’s description of the murder, had the potential to cast doubt regarding

 whether Abbitt or Albarran were the male and female intruders in Feimster’s

 apartment on the night of the murder.

¶ 82 There was strong evidence to inculpate Phillips. In addition to Feimster’s

 family identifying Phillips as a suspect first, Gregory’s statement that “[Phillips’

 picture] does look like [the woman who shot Feimster],” which was not included in a

 photographic lineup, is highly relevant. The confidential informant implied McCain

 was with the woman who shot Feimster. When asked specifically whether Phillips,

 among two others, had anything to do with the murder, the informant responded

 negatively regarding the two other people, but told the police he “couldn’t advise
 STATE V. ABBITT

 2021-NCCOA-403

 MURPHY, J., dissenting in part and concurring in part.

 about [whether Phillips was the woman he saw].” If Phillips was the black woman in

 the apartment on the night of Feimster’s murder, and there was only one female

 intruder, such evidence would directly exculpate Abbitt. Additionally, other evidence

 implicated Phillips in Feimster’s murder and aligned with Gregory’s testimony

 regarding the small size of the gun and use of gloves. A confidential informant

 identified a vehicle consistent with Phillips’ vehicle at the scene of the crime on the

 day of the murder, and a .25 caliber Lorcin pistol and latex gloves were discovered

 inside Phillips’ vehicle. Further, Gregory testified the Hispanic man “had on latex

 gloves[.]”

¶ 83 Gregory’s statement regarding Phillips looking like the woman who killed her

 daughter, and Feimster’s family’s suspicion of Phillips, taken with the other evidence

 found in Phillips’ vehicle and the informant’s statements in the police report, raises

 more than a mere inference that Phillips may have been involved in Feimster’s

 murder. Rather, it “constitute[s] a possible alternative explanation for the victim’s

 unfortunate demise and thereby casts crucial doubt upon the State’s theory of the

 case.” McElrath, 322 N.C. at 13-14, 366 S.E.2d at 449. This evidence was not only

 relevant, but pointed directly to the guilt of Phillips while exculpating Abbitt. See

 Miles, 222 N.C. App. at 607, 730 S.E.2d at 827.

¶ 84 The case of State v. Israel further undermines the Majority’s reasoning. State

 v. Israel, 353 N.C. 211, 539 S.E.2d 633 (2000). In Israel, “the jury was not permitted
 STATE V. ABBITT

 2021-NCCOA-403

 MURPHY, J., dissenting in part and concurring in part.

 to hear” evidence from the defendant regarding the victim’s fear of her ex-boyfriend,

 as well as evidence the ex-boyfriend had been seen at the victim’s apartment complex

 “twice during the week of the murder.” Id. at 215, 539 S.E.2d at 636 (emphasis

 added). Our Supreme Court reasoned:

 [The ex-boyfriend] had both the opportunity to kill her—
 pictured as he was on the surveillance videotape entering
 and leaving the victim’s apartment [within a day of the
 estimated time of death]—and, given his history with the
 victim, a possible motive. . . . [A]mple evidence supported
 [the defendant’s] recent interaction with the victim.
 Equally ample was excluded evidence of [the victim’s ex-
 boyfriend’s] own recent interaction with [the victim], and
 the history of his dealings with her point to more sinister
 motives than any left behind in [the] defendant’s
 fingerprints or personal effects.

 Id. at 219, 539 S.E.2d at 638.

¶ 85 The offered evidence similarly placed Phillips at the scene of the crime as the

 confidential informant indicated Phillips’ vehicle was at the apartment complex

 “minutes before the murder” and that a black woman was with McCain.3 While the

 offered evidence regarding Phillips does not provide a specific motive, the victim’s

 family’s suspicion of Phillips as a suspect, as well as the informant’s statement that

 the female with McCain was “already beefing” with Feimster, could have provided a

 potential motive for Phillips to harm Feimster, similar to the ex-boyfriend in Israel.

 3 Although the informant’s statement explicitly referenced McCain, it clearly
 contemplated the woman McCain was with at the apartment at the same time as McCain.
 STATE V. ABBITT

 2021-NCCOA-403

 MURPHY, J., dissenting in part and concurring in part.

 The informant’s statements in the report potentially places Phillips at the scene of

 the crime at a time more proximate to the crime than the ex-boyfriend in Israel and

 casts doubt on the accuracy of Gregory’s testimony.

¶ 86 Further, Gregory claimed she was not shown a picture of Phillips, in the

 photographic lineup or otherwise. However, Defendants intended to offer evidence

 that Gregory initially identified Phillips as looking like the woman in the apartment

 on the night of the murder to impeach Gregory’s recollection of the individuals in the

 apartment on the night of the murder. The trial court prevented Defendants from

 presenting evidence that would have fit the exact definition of impeachment

 regarding Gregory’s testimony. “The primary purpose of impeachment is to reduce

 or discount the credibility of a witness for the purpose of inducing the jury to give less

 weight to his testimony in arriving at the ultimate facts in the case.” State v. Bell,

 249 N.C. 379, 381, 106 S.E.2d 495, 498 (1959) (quoting State v. Nelson, 200 N.C. 69,

 72, 156 S.E. 154, 156 (1930)). “Impeachment evidence has been defined as evidence

 used to undermine a witness’s credibility, with any circumstance tending to show a

 defect in the witness’s perception, memory, narration or veracity relevant to this

 purpose.” State v. Gettys, 243 N.C. App. 590, 595, 777 S.E.2d 351, 356 (2015) (quoting

 State v. Allen, 222 N.C. App. 707, 721, 731 S.E.2d 510, 520, disc. rev. denied, appeal

 dismissed, 366 N.C. 415, 737 S.E.2d 377 (2012), cert. denied, 569 U.S. 952, 185 L. Ed.

 2d 876 (2013)), disc. rev. denied, appeal dismissed, 368 N.C. 685, 781 S.E.2d 798
 STATE V. ABBITT

 2021-NCCOA-403

 MURPHY, J., dissenting in part and concurring in part.

 (2016). As Defendants argued at trial, the proffered evidence, “in the jury’s eye[,]

 [had the potential to] call into question the reliability of the description[s] that [at]

 different times were given by Ms. Gregory.” Consequently, the evidence implicating

 Phillips was also relevant to impeach Gregory’s testimony or cause the jury to

 question her testimony at trial.

¶ 87 The trial court’s exclusion of this evidence significantly curtailed both

 Defendants’ cases. The State built its case on the fact that if one Defendant was

 guilty, the other was guilty.4 For example, the State introduced evidence of

 Defendants’ cell phone records, showing they had been in contact the day of the crime.

 However, if Defendants were able to introduce evidence that Phillips was the black

 woman in the apartment on the night of the murder, thus exculpating Abbitt, this

 would have also weakened the State’s case that Albarran was the Hispanic man in

 the apartment on the night of Feimster’s murder.5

 ‘[T]he twofold aim of criminal justice is that guilt shall not
 escape or innocence suffer.’ We have elected to employ an
 adversary system of criminal justice in which the parties
 contest all issues before a court of law. The need to develop
 all relevant facts in the adversary system is both

 4 In response to the State’s motion in limine seeking to exclude evidence regarding the

 possible guilt of another, Albarran acknowledged the State’s tactic in arguing that the State’s
 case was “if one is guilty[,] the other is guilty.”
 5 For instance, if Phillips was the black woman in the apartment on the night of the

 murder, and not Abbitt, Albarran was not the Hispanic man in the apartment. Additionally,
 if McCain was in the apartment that night, and not Albarran, then Abbitt was not the black
 woman in the apartment that night.
 STATE V. ABBITT

 2021-NCCOA-403

 MURPHY, J., dissenting in part and concurring in part.

 fundamental and comprehensive. The ends of criminal
 justice would be defeated if judgments were to be founded
 on a partial or speculative presentation of the facts. The
 very integrity of the judicial system and public confidence
 in the system depend on full disclosure of all the facts,
 within the framework of the rules of evidence.

 United States v. Nixon, 418 U.S. 683, 709, 41 L. Ed. 2d 1039, 1064 (1974) (quoting

 Berger v. United States, 295 U.S. 78, 88, 79 L. Ed. 1314, 1321 (1935), overruled on

 other grounds by Stirone v. United States, 361 U.S. 212, 4 L. Ed. 2d 252 (1960)).

 Defendants’ proffered evidence was of great consequence to the pursuit of the truth

 as to who killed Feimster.

¶ 88 Albarran also desired to introduce evidence that someone else, namely McCain,

 may have committed the crimes. The confidential informant implied that McCain

 was at the apartment complex with a black woman minutes before the murder.

 Consistent with Gregory’s testimony, the informant said McCain did not kill

 Feimster, but the black woman with McCain did. The informant also stated McCain

 was wearing “two big coats,” “was trying to conceal his face with a white tshirt,” and

 was carrying a gun. Similar to the informant’s statement, Gregory described the man

 as wearing a white t-shirt, latex gloves, and a work jacket, and as carrying a gun.

¶ 89 In granting the State’s motion in limine, the trial court stated “I don’t see that

 this confidential informant [who identified McCain and a black woman at the

 apartment] provides any information that would make me reconsider my ruling.” The
 STATE V. ABBITT

 2021-NCCOA-403

 MURPHY, J., dissenting in part and concurring in part.

 trial court, and now the Majority, have not properly considered the relevancy of the

 evidence that implicated others, exculpated Albarran and Abbitt, and further

 impeached Gregory. In Israel, the victim’s ex-boyfriend was seen at the victim’s

 apartment complex “twice during the week of the murder.” Israel, 353 N.C. at 215,

 539 S.E.2d at 636 (emphasis added). Here, McCain was seen at the apartment

 complex with a gun minutes before the murder.6

¶ 90 Additionally, Gregory’s initial identification of Phillips as looking like the

 woman in the apartment on the night of Feimster’s murder, and the other evidence

 implicating Phillips, similarly undermines Gregory’s identification of Albarran, as

 Gregory may have also been mistaken about Albarran, rather than McCain, being in

 the apartment that night. Defendants had the right to impeach by offering evidence

 6 I note our Supreme Court’s opinion in State v. Williams, where the defendant sought

 to introduce evidence that three others may have committed the murders he was accused of.
 State v. Williams, 355 N.C. 501, 532, 565 S.E.2d 609, 627 (2002), cert. denied, 537 U.S. 1125,
 154 L. Ed. 2d 808 (2003). In rejecting the defendant’s arguments, our Supreme Court held
 “there was no evidence to indicate that [the first suspect] had committed this crime except
 for his proximity to the crime scene.” Id. at 533, 565 S.E.2d at 628. Here, McCain was not
 only in close proximity to the crime scene, within minutes of the murder, but additional
 evidence indicated he committed the crime. The informant stated McCain was seen with a
 gun, two coats, a white t-shirt (trying to conceal his face from identification), and implied he
 was with a black woman in a car that matched Phillips’ car. Similarly, Gregory described
 the man in the apartment on the night of the murder to be wearing a work jacket and a white
 t-shirt, and to be carrying a gun. Consistent with Gregory’s testimony, the informant stated
 McCain did not kill the victim; rather, the woman did at McCain’s request. Accordingly,
 McCain was not only in close proximity to the crime, like the suspect in Williams, but
 Defendants were also prepared to offer additional evidence indicating McCain committed the
 crime.
 STATE V. ABBITT

 2021-NCCOA-403

 MURPHY, J., dissenting in part and concurring in part.

 of Gregory’s prior inconsistent statements or dishonesty. See State v. Anderson, 88

 N.C. App. 545, 548, 364 S.E.2d 163, 165 (1988) (marks and citation omitted)

 (“[I]mpeachment is an attack upon the credibility of a witness, and is accomplished

 by such methods as showing the existence of bias; a prior inconsistent statement;

 untruthful or dishonest character; or defective ability to observe, remember, or

 recount the matter about which the witness testifies.”).

¶ 91 The trial court concluded that Defendants’ evidence merely implicated the

 involvement of other parties, making any evidence regarding McCain and Phillips

 not exculpatory, because one or both of the Defendants was talking on the phone

 asking questions, including, “Where are you? When are you going to be here[?]” The

 Record lacks evidence linking the four–Phillips and McCain with Abbitt and

 Albarran–by phone or otherwise. The trial court’s grant of the State’s motion in

 limine excluded the evidence underlying Defendants’ key exculpatory theory of

 mistaken identification, and instead assumed a connection between Defendants and

 any other potential perpetrators, without sufficient evidentiary support. The

 evidence of other suspects had the potential to negate Defendants’ involvement in the

 crime if the intrusion into Feimster’s apartment and her murder were committed by

 Phillips and/or McCain.

¶ 92 The following evidence was potentially exculpatory to Abbitt: Gregory’s

 statement that Phillips looked like the person who shot Feimster; the discovery of a
 STATE V. ABBITT

 2021-NCCOA-403

 MURPHY, J., dissenting in part and concurring in part.

 potential murder weapon and latex gloves consistent with the crime in Phillips’ car;

 a car consistent with Phillips’ car being at the scene of the crime; and the report that

 a woman with McCain committed the murder. This evidence points to one black

 female intruder, Phillips, in Feimster’s apartment that night, which would exculpate

 Abbitt from Feimster’s murder. The following evidence was potentially exculpatory

 to Albarran: an informant placing McCain at the apartment complex minutes before

 the murder; the consistent identification of a male in a white t-shirt and coat with

 latex gloves; and the connection of McCain with Phillips in conjunction with the

 evidence inculpating Phillips. This evidence also points to one male intruder,

 McCain, in Feimster’s apartment that night, which would exculpate Albarran from

 Feimster’s murder. Consequently, the trial court erred in precluding Defendants

 from introducing such evidence.

¶ 93 “When the trial court excludes evidence based on its relevancy, a defendant is

 entitled to a new trial only where the erroneous exclusion was prejudicial.” Miles,

 222 N.C. App. at 607, 730 S.E.2d at 827. “A defendant is prejudiced by the trial

 court’s evidentiary error where there is a ‘reasonable possibility that, had the error

 in question not been committed, a different result would have been reached at the

 trial out of which the appeal arises.’” Id. (quoting N.C.G.S. § 15A-1443(a) (2011)).

 “[The] [d]efendant bears the burden of showing prejudice.” Id. Here, Defendants

 have shown a reasonable possibility that the jury would have reached a different
 STATE V. ABBITT

 2021-NCCOA-403

 MURPHY, J., dissenting in part and concurring in part.

 result if the trial court had admitted the evidence implicating Phillips and McCain,

 as this evidence would have exculpated Defendants and the only evidence directly

 connecting Defendants to the crime was Gregory’s identification of them, which would

 have been undermined by her impeachment.

 CONCLUSION

¶ 94 Defendants sought to introduce exculpatory evidence regarding the

 involvement of two different suspects in the murder of Feimster. This relevant

 evidence simultaneously implicated others and exculpated Defendants. Further, it

 impeached the State’s key witness. The trial court should not have granted the

 State’s motion in limine to exclude questions or testimony regarding the guilt of

 another, and, had the trial court’s evidentiary error not occurred, a different result

 was reasonably possible. Defendants are entitled to a new trial, and, other than the

 validity of the short form indictment, the remaining issues on appeal are moot. I

 respectfully dissent.